STATE *vs.* RAYMOND E. PATRIARCA.
SAME *vs.* SAME.

JUNE 25, 1945.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

152

CONDON, J.   These are two indictments against the defendant as an accessory before the fact to the murders of two persons at the state prison on April 19, 1930. The defendant is charged therein with the doing of certain acts on April 11, 1930 which it is alleged constitute the offense of accessory before the fact to each murder.  The indictments were returned against him on September 25, 1944, on which date he pleaded not guilty to each indictment.  Later, on

October 20, 1944, he was allowed to withdraw that plea and to file to each indictment a demurrer, a motion to dismiss and a motion to quash, all based on substantially the same ground, namely, the statute of limitations. General laws 1923, chapter 407, sec. 12, now G. L. 1938, chap 625, §12.

After a hearing on those pleadings in the superior court that court reserved decision and certified to this court for our determination the questions thereby raised as questions of doubt and importance, in accordance with the provisions of G. L. 1938, chap. 545, §5, and of rule 20 of the Rules of Practice of the Supreme Court. The questions thus certified need not be set out in full here, as each raises the same question of law which is stated in the state's brief as follows: "Does the statute of limitations bar an indictment as accessory before the fact to murder after three years from the date of the offense?"

The statute reads as follows: "No person shall be convicted of any offense, except treason against the state, murder, arson, burglary, counterfeiting, forgery, robbery, larceny, rape, or bigamy, unless indictment be found against him therefor within 3 years from the time of committing the same." G. L. 1938, chap. 625, §12. Except in minor particulars which have no bearing on the question before us, that statute has remained the same since 1798. At no time during all those years has the offense of accessory before the fact to any of the crimes set out in the excepting clause of the statute appeared in such clause. Its absence is accounted for by the state on the ground that the word "murder" includes "accessory before the fact to murder" and therefore it was unnecessary for the legislature to make specific mention of the offense "accessory before the fact to murder". And it is urged that this is a reasonable interpretation especially in view of the fact that the legislature has provided, in another section of the general laws, that an accessory before the fact to a felony "shall suffer the like punishment as the principal offender". G. L. 1938, chap. 623, §1.

The fundamental question before us is whether the offense of accessory before the fact to murder is, by its nature, included in the term "murder" so as to have necessarily been within the contemplation of the legislature when it expressly excepted the offense of murder from the benefit of the provisions of our statute of limitations. Defendant argues that there is no merit in the contention that it is so included, because the offense of accessory to a felony is generally recognized as a distinct and separate offense. Both parties concede that there are no precedents in this state on this precise question but defendant cites a case from Texas, *Dinklage* v. *State*, 135 *Tex. Cr.* 10, which he urges is directly in point. The state, on the other hand, while admitting that that case is in point in defendant's favor, cites the case of *People* v. *Mather*, 4 *Wend.* (N. Y.) 229, and contends that it is in point to the contrary. The state further argues that on principle, irrespective of authority, the statute ought to be construed to except from the three years limitation the crime of being an accessory before the fact to murder just as much as the crime of murder itself; and that any other interpretation would be repugnant to justice and right reason.

Let us say here at the outset that our duty in the premises is solely to construe the statute before us and not to amend it so that it may promote what we might consider a sounder public policy in the prosecution of crime. What is or shall be, within constitutional limits, the policy of the state in the enforcement of its criminal laws is not in our keeping. The constitution vests such power in the legislature. That department declares the policy of the state in the statutes which it enacts, as the law making department of the state government. Where a conflict of opinion arises as to what is the policy declared by any given statute we, as the interpreters of the law, are charged with the duty of determining that question. In such a case we do not formulate the policy, but merely find what the legislature intended it to be.

It is axiomatic that the policy of a statute is to be found in the legislative intent. And it is a cardinal rule in the con-

struction of statutes that such intent is, itself, to be found solely in the words of the statute, if they are free from ambiguity and express a sensible meaning. *Bloomfield* v. *Brown,* 67 R. I. 452. Stated in another way, where the language of the statute is plain and unambiguous, it declares its own meaning and there is no room for construction. *Hathaway* v. *Hathaway,* 52 R. I. 39. To illustrate the principle concretely, where a literal reading of the words of the statute, which gives them a broad or narrow or popular or technical meaning as the case may be, does not make the statute applicable to the matter before the court, we may not add words to or omit words from the statute in order to make it applicable, even though we may think that by doing so a wiser policy would be thereby promoted.

Looking at the statute before us in the light of those rules we find that the legislature has excepted therefrom several high crimes among which is murder. Since the word "murder" is a technical term which denotes a distinct and definite crime at common law, its comprehension in this statute is to be determined by its technical meaning. According to that meaning one could not be guilty of murder and at the same time be guilty of the offense of accessory before the fact to such murder.

The common-law distinction between principals and accessories in felonies still holds in this state. However, at least as early as the laws of 1647, it was provided by statute that an accessory who was present at the commission of a felony was a principal along with the actual perpetrator of the crime. See 1 Records of the Colony of Rhode Island, 163,172. In that compilation is a catalogue of crimes in which appears "Murther" and "Accessories". Murder is therein defined thus: ". . .when a Man, upon malice pretended, precedent and with his will, doth kill another feloniouslie; . . . all that are present ayding and abetting are principalls, though they give never a stroke." It is to be noted that an accessory before the fact who was absent is not mentioned in that definition.

By the laws of 1798, sec. 19, page 590, it was expressly provided: *"And be it further enacted,* That every person who shall aid, assist, abet, counsel, hire, command or procure any person to commit the crime of murder, either in the first or second degree, or rape, sodomy, arson, robbery or burglary, is and shall be considered an accessary before the fact to the principal offender or offenders, and shall suffer the like punishment as is by law assigned to the crime, to the commission of which he shall be so accessary."

In the laws of 1844, however, this statute was amended so that it applied to any crime, whereas formerly it applied only to certain expressly enumerated felonies. It appears at page 398 and reads as follows: "Sec. 120. Every person who shall aid, assist, abet, counsel, hire, command or procure another to commit any crime or offence, shall be proceeded against as principal, or as an accessory before the fact, according to the nature of the offence committed; and upon conviction shall suffer the like punishment as the principal offender is subject to by this act."

The words "shall be proceeded against as principal, or as an accessory before the fact, according to the nature of the offence committed" were inserted in the statute because in its new form it applied to misdemeanors as well as felonies. *State v..Sprague,* 4 R. I. 257; *State v. Shapiro,* 29 R. I. 133. It does not appear from either case that this court deemed the common-law distinction between principals and accessories before the fact in felonies to have been abolished by that statute. On the contrary, it was expressly held in the *Shapiro* case that the statute did not restrict the common law but enlarged it. At that time the statute was in substantially the same form as it was in the laws of 1844 and as it is now in G. L. 1938, chap. 623, §1.

In this state it is still the law that an indictment for a felony must charge a person as a principal or as an accessory before the fact, according to the facts; and that on an indictment which charges the defendant as principal he cannot be convicted on evidence showing that he was merely an acces-

sory, or *vice versa*, 1 Brill, Cyc. of Crim. Law, §252, p. 450. On that principle it has been held in numerous cases that an accessory before the fact must be proceeded against as such accessory and not as a principal.

In Massachusetts where a person was indicted on two counts, the first charging him with forgery and the second with being an accessory before the fact, it was held that an acquittal on the first count and a conviction on the second were not repugnant because each count charged a different crime. *Pettes* v. *Commonwealth,* 126 Mass. 242. See also *Commonwealth* v. *DiStasio,* 297 Mass. 347.

In Nebraska a conviction of larceny was reversed by the appellate court because the proof showed that the defendant was guilty only of being an accessory before the fact to the larceny. The court said that, since Nebraska had not, as some other states had done, abolished the common-law distinction between the two offenses, "aiding or abetting or procuring another to commit a felony" was "a substantive and independent crime", and it concluded, therefore, that the defendant "was indicted for one crime and convicted of another." *Skidmore* v. *State,* 80 Neb. 698, 700, 702.

In *State* v. *Ricker,* 29 Me. 84, 89, it was argued that the effect of a statute there was to abolish the distinction between accessories and principals but the court held otherwise, saying: "The language of the statute, in the third mode prescribed for the indictment and conviction of the accessory before the fact, shows that it was the meaning of the Legislature, that the two offences should still continue distinct."

It is established in Wisconsin that where one is charged simply as a principal he "cannot be convicted as an accessory before the fact, as the two offenses are separate and distinct crimes." *Krueger* v. *State,* 171 Wis. 566, 579.

A Virginia statute provided that "every accessory before the fact, shall be *punished* as if he were the principal in the first degree" and under it a defendant was indicted and tried as a principal but the proof showed that he was but an accessory before the fact. In reversing the conviction the

court held that the statute did not alter the common law and therefore defendant could not be convicted as such an accessory on an indictment charging him as a principal. *Hatchett* v. *Commonwealth,* 75 Va. 925.

In an early New York case it was held that an accessory before the fact could not be convicted as such on a complaint charging larceny, as the two offenses were not the same. *Norton* v. *People,* 8 Cowen 137. And the supreme court of New Hampshire, in the case of *State* v. *Buzzell,* 58 N. H. 257, involving a murder, has laid down the law in this manner: "In murder, the felony of an accessory is not the act of a principal; and the felony of a principal is not the act of an accessory. In fact, they are different acts, done at different times and different places; in law, they are different crimes."

Finally here in our own state this court has said that embezzlement and accessory before the fact to embezzlement are "different offences". *State* v. *Davis,* 37 R. I. 373, 392.

From our examination of the cases in those states where the rule of the common law has not been abrogated by statute, including the cases above discussed and many more, we find that it is uniformly held that a felony and being accessory before the fact to that felony are two separate and distinct offenses. If one offense is distinct from the other, how can we say that the legislature must have intended in our statute of limitations to except therefrom accessories before the fact when it actually enumerated the excepted felonies by name and made no mention of accessories before the fact to such offenses? We certainly cannot make that construction on a literal reading of the statute. If we did, it would clearly do violence to the technical meaning of the term "murder" in the law of crimes and go far beyond the common-law definition of that crime and its definition in the laws of 1647. It would also ignore the definition of accessory before the fact as set out in those laws as a separate offense.

But the state cites *Williams* v. *Smith,* 28 R. I. 531, as an instance where, in construing the statute of limitations now

before us, this court did not confine the term "larceny" to its technical meaning at common law but interpreted it more broadly so as to include the term "embezzlement". In that case, however, this court found, in the statute of embezzlement, a sound reason for such interpretation. That statute expressly declares that every embezzler "shall be deemed guilty of larceny, and may be tried, sentenced and punished as for any other larceny". If, in the instant case, our statute declared that accessories before the fact shall be deemed to be principals, then the reasoning upon which the decision in the *Williams* case rests would be applicable, but our statute does not contain such language. Hence that case is not in point on the problem here.

In the New York case of *People* v. *Mather, supra,* cited by the state, the construction of a statute of limitations was not immediately involved. The occasion for the court's construction arose over the refusal of a witness, at the trial of a conspiracy indictment, to answer a certain question on the ground of incrimination. The trial court sustained the objection and excluded the question. The state excepted. On appeal the court held that the witness could not have been incriminated by answering the question on the facts then known because the statute of limitations would be a bar to an indictment of the witness for conspiracy to assault and beat the victim of the conspiracy. But the court then went on to suppose that the victim had not been merely beaten but had been murdered—apparently it was not known what had become of him—then, it said, the witness would be in danger of prosecution as an accessory before the fact and as such would not have the protection of the statute, as murder was excepted therefrom.

Answering the state's argument in that case that the term "murder" must be strictly construed and that accessories before the fact were not included thereunder the New York court said: "Whatever is murder is included in it. If the crime of an accessary to a murder before the fact is not a murder, it is without a specific name." No authority is cited

for that statement. It is contrary to the court's own holding but two years before in *Norton* v. *People, supra*. It is also contrary to every other authority which we have examined, and it does not appeal to us as sound. If the court was disregarding the common-law distinction between accessories before the fact and principals and was considering all as principals, no fault could be found with its statement. But if it recognized that distinction it could not correctly say that "the crime of an accessory before the fact" is murder, because, at common law, proof merely of the elements of accessory before the fact to murder would not support a conviction for the crime of murder. In the *Norton* case the New York court had previously recognized that difficulty when it held that the offense of larceny and the offense of accessory before the fact to larceny were not the same.

The defendant, in citing *Dinklage* v. *State, supra*, argues that it is directly in point, and the state concedes that it is. There the Texas court was confronted with the contention that the Texas statute of limitations was a bar to the conviction of the defendant as an accomplice to burglary and theft. Defendant had been indicted, tried and convicted as an accomplice more than three years after the crime had been committed. Under the statute of limitations prosecution for a felony was barred after three years, except that for burglary and theft and certain other grave felonies the limitation was five years. The prosecution in question had been commenced within five years and the state contended that the statute did not apply as "accomplice to burglary" and "burglary" were the same offenses. In Texas an accessory before the fact is termed an accomplice. The court rejected the state's contention and held that the law was established in Texas that the offenses were separate and distinct. After so deciding the court said that it thought it would be better if the limitation was made the same for each offense but it said further that that was a matter for the legislature.

The above case is consistent with the principles of the common law. It recognizes that, in the absence of statute,

the court must follow that law but the court also points the way to reform of the law if the people desire it. In the case at bar we too must follow the common law, as long as our legislature does not abrogate it and declare accessories before the fact to be principals. There is no question here of injustice to the state. It is solely for the legislature to say that prosecution for certain crimes shall be barred after a certain period and that prosecution for others shall never be barred. Its classification of the offenses may seem incongruous in that prosecution for a certain crime may never be barred and prosecution for another crime which is equally heinous is barred after three years. If, however, such is the will of the legislature it must prevail.

Neither incongruity nor inequality in the dispensation of legislative grace is injustice in the legal meaning of that word. In such a matter the legislature may discriminate as it chooses. The fact that a literal reading of a statute shows that it is discriminatory is not a reason for invoking judicial construction of the statute in order to remove such discrimination.

In the case at bar, taking the statute as it reads, the discrimination, if we may call it that, works against the state. However, the application of the rule of construction which we follow here can also work against the defendant. In *Moore* v. *State*, 20 Tex. App. 275, a person charged with attempt to commit rape was denied the benefit of a statute which barred any prosecution commenced more than one year after a rape was committed but did not mention the crime of attempt. The court rejected defendant's contention that rape included attempt to rape, and held that such lower offense fell under the general statute of limitations wherein the period prescribed for commencing prosecution was three years.

There is another circumstance in the history of our statutes which tends to confirm our view that when the legislature excepted murder from the benefit of our statute of limitations, it did not intend to include in the exception the crime of being an accessory before the fact. The statutes

show that when the legislature wished to exclude accessories as well as principals from the benefit of a certain right it did so by specifically mentioning them. This clearly appears from the following quotation from G. L. 1938, chap. 584, §2, with reference to the right to prosecute a writ of habeas corpus: "The following persons, confined in any jail, shall not be entitled, as of right, to demand and prosecute said writ: *First*. Persons convicted of treason against this state, murder, rape, robbery, arson, burglary, or as accessories before the fact in either of those crimes, or committed on suspicion of being guilty of either of those crimes, or as accessories thereto before the fact, when the cause is plainly and specifically expressed in the warrant of commitment."

That statute has appeared in such form in every revision of the public laws, general statutes and general laws beginning with 1798. This covers the same period as that during which our statute of limitations has been on the statute books in substantially its present form. It is, therefore, significant that the legislature, in drafting an exclusion clause in each statute, mentions accessories before the fact in one and does not do so in the other. The statutes are plainly in *pari materia*. Indeed, they not only pertain to the same subject matter in general but they are alike in that they are relief statutes. Surely, if the legislature intended to exclude, from the statute of limitations, accessories before the fact the habeas corpus statute shows that it knew how to do it.

To hold that the legislature refrained from expressly mentioning such accessories in the statute of limitations because it understood that they were in the same category as principals in the law of crimes and were therefore included under the term "murder" would, we think, be a strained construction of their language, consistent neither with the common law nor with the practice of the legislature itself. Moreover, such a construction would be illiberal toward the accused and would run counter to the general rule in the construction of statutes of limitation. They should "be liberally con-

strued in favor of the defendant, not only because such liberality of construction belongs to all acts of amnesty and grace, but because the very existence of the statute is a recognition and notification by the legislature of the fact that time, while it gradually wears out proofs of innocence, has assigned to it fixed and positive periods in which it destroys proofs of guilt." 1 Wharton, Cr. Law (7th ed.) §444a. Exceptions from the benefits of such statutes are always construed strictly against the state. *State* v. *Clemens,* 40 Mont. 567; *State* v. *Heller,* 76 Wis. 517.

In view of our discussion of the statute here involved, its history, and the generally accepted rules which govern its construction, and which bind us in the exercise of our exclusively judicial function, we are constrained to answer in the affirmative the questions certified to us.

The papers in the case, with our answer in the affirmative to each question certified indorsed thereon, are remanded to the superior court for further proceedings.

*John H. Nolan,* Attorney General, *Raymond F. Henderson,* Asst. Atty. G., for State.

*Peter W. McKiernan, Edward F. McElroy, John C. Going,* for defendant.