248 A.2d 327.

STATE *vs.* SALVATORE SCOTTI.

DECEMBER 11, 1968.

PRESENT: Roberts, C. J., Paolino, Joslin and Kelleher, J.J.

KELLEHER, J. This is a criminal complaint which charges that the defendant did "* * * knowingly have in his possession a certain bill, slip, certificate, token and other device or article such as is used in carrying on, promoting, or playing the game commonly known as policy or policy lottery * * *." It was tried before a justice of the superior court sitting without a jury. He found the defendant guilty. The case is before us on the defendant's exception to the trial justice's decision.

From the record, it appears that defendant was arrested on Sunday, November 8, 1953, in the town of Johnston by a state trooper. At the trial it was stipulated that at the time he was apprehended defendant was in actual possession of 17 different slips of paper upon which various numbers were recorded. The prosecution, however, was held to its burden to show that defendant's papers were policy lottery slips.

The sole witness in the superior court proceedings was Sergeant Walter B. Haggerty of the state police. The defendant conceded that the officer possessed sufficient expertise to identify the slips and explain the significance of the markings thereon to the trial justice. The slips were separated into two groups. The first group contained seven slips. The officer testified that these slips were records which showed the number of bets that had been accepted, the amount of each wager and the number chosen by each bettor. The second group consisted of 10 slips. Sergeant Haggerty told the court that these papers were records relating to the productivity of individuals he described as "run-

ners."[1] Each of these slips, he said, represented a tally of the amount of money taken in by the runner as he made his collections. Several notations made on these slips noted any "hit" on a winning number on which a payoff had been made to the successful bettor. The trooper also testified that these slips evidenced other mathematical computations which indicated that each slip also contained a summary of income received from the lottery activity conducted during the six days prior to defendant's arrest.

In cross-examination, Sergeant Haggerty stated that all the slips found on defendant related to bets placed on events that had already transpired. The outcome of the bets had already been decided during the previous week. In his opinion, the slips found in defendant's possession were "dead" on the Sunday he was taken into custody.

Because of the officer's testimony as to the "dead" status of the slips at the time of his arrest, defendant contends that he could not be guilty of a crime under the statute since it was necessary that the state prove that the slips found on him were "live." In the jargon of the gambling fraternity a slip is "live" if it is a record of a wager placed on a present event or something which is to occur in the future. The trial justice disagreed with defendant's view of our statute[2] and so does this court.

---

[1]In lottery-policy circles, a runner is not especially known or chosen because of his athletic prowess. He is the person who accepts the wager from the gambling public, records the chosen numbers and relays this information on to another associate in this illicit enterprise. As pointed out in *State* v. *Tutalo, infra,* the game of policy-lottery involves wagering that certain numbers or combinations thereof will coincide with the pari-mutuel payoffs at certain designated race tracks as the payoffs are regularly published in certain selected newspapers. When the numbers picked by a player agree with the figures published, the player is a winner.

[2]This case was tried in 1954 when the statute relating to the possession of lottery slips was then cited as G. L. 1938, chap. 612, §36. As a result of the compilation of the general laws which took place in 1956, the relevant portion of the lottery statute discussed here is now cited as G. L. 1956, §11-19-5.

In our opinion, the viability of a bet, the recording of which is on a slip found on a person, has no bearing on his legal status under the pertinent statute. The precise portion of the statute under which defendant was charged reads as follows:

"* * * whoever shall have in his possession, knowingly, any bill, slip, certificate, token or other device, or article of any kind such as is used in carrying on, promoting, or playing the game commonly known as policy-lottery or policy, shall, upon conviction, be punished * * *."

The defendant, in taking the position that he does, points to the case of *State* v. *Gaines*, 32 R. I. 462, 79 A. 1107, and argues that the holding there stands for the proposition that a defendant who is charged with a violation of the law barring the possession of a lottery slip must be shown to have on him a slip which concerns a present or future event. If such a document relates to an event that has transpired, defendant would attribute to the slip merely some historical significance but nothing else which would bring it within the statutory prohibition.

In *Gaines,* the facts are quite similar to those in the case at bar. The statute there was a predecessor to the one under consideration here and both acts are almost identical. The defendant *Gaines* when arrested had in his possession a slip upon which were listed the winning numbers that had been drawn in a lottery which had been held sometime earlier that day. He was using the slip as a ready reference to inform any inquiring person who might approach him as to what were the winning numbers. In discussing that portion of the appeal dealing with the denial of the motion for a new trial, this court upheld the trial justice's action by saying he was "unquestionably correct." The trial justice when ruling on the motion discussed the evidence and observed that the slip of paper was being used to "promote" the lottery game. From this portion of the trial justice's

decision which is set forth in the opinion, defendant reasons that there was implicit recognition by this court that a lottery slip to come within the purview of the statute must have some present value before a conviction can be deemed valid. We do not agree with defendant's interpretation of *Gaines*. Simply because the slip in that case still retained some utilitarian quality does not persuade us that such a finding was the keystone upon which the conviction rested in that case. The statement of the trial court which was repeated in the opinion of this court was a pure gratuity which in no way entered into the determination of the guilt of *Gaines*.

Indeed, we believe that the holding in *Gaines* can be viewed as authority for the exact opposite of what defendant cites it for. This court in *Gaines* was concerned with the efficacy of the trial court's ruling on a motion for a new trial. In doing so, it was required that it pass upon the sufficiency of the evidence. It was uncontradicted that at the time *Gaines* was arrested, the slip was but a record of an event that had occurred earlier in the day. It was certainly not "live" in the sense that defendant urges that a lottery slip must be if it is to be embraced by the statute.

Finally, defendant contends that no inference of criminal behavior can be reasonably drawn from the undisputed fact that he had in his possession lottery slips which had no "actual effective purpose." This allegation clearly goes to the legislative intent. In *State* v. *Tutalo*, 99 R. I. 14, 205 A.2d 137, we pointed out that the legislature has made it a criminal offense, subject to an exception specifically provided,[3] for any person knowingly to have lottery slips in his possession whatever the purpose of that possession may be. It is the possession without more which constitutes the

[3]Section 11-19-6 states that the possession of a lottery slip by any person other than a public official in the course of his duties shall raise a presumption of a conscious possession which is violative of §11-19-5.

offense and not possession accompanied by an unlawful purpose. In the *Tutalo* case, we upheld the constitutionality of the statute at issue here. We ruled that the legislature in making the possession of a lottery slip a crime was engaged in a legitimate exercise of the police power aimed at the suppression of lotteries. This legislative action can also be considered an effective implementation of Art. IV, Sec. 12 of the Rhode Island Constitution which bars lotteries in this state. In enacting the statute which we have considered in this case, the legislature was well within its prerogative in promulgating this particular legislative enactment for the protection and good of the public.

We do not view this appeal as one calling for any exercise in the art of statutory construction. Where, as here, the language of the statute dealing with the prohibition of lottery slips is clear, unambiguous and declares its own meaning, there is no need for construction. *State* v. *Patriarca*, 71 R. I. 151, 43 A.2d 54. The defendant would have us, in the face of the crystal-clear language of the statute, add thereto an additional requirement of a time element before a conviction thereunder could be established. We can find nothing within the obvious provisions of the law which would persuade us to accept this view. Rather, we believe that it is incumbent upon us to give effect to the legislative purpose behind this statute which is consonant with the legislature's comprehensive effort to eradicate lotteries. See *East Shore Land Co.* v. *Peckham*, 33 R. I. 541, 82 A. 487. To do otherwise would be to ignore the will of the general assembly and would amount to judicial redrafting of the law.

The defendant's exception is overruled and the case is remitted to the superior court for further proceedings.

Powers, J., did not participate.

*Herbert F. DeSimone,* Attorney General, *Luc R. La-Brosse,* Special Assistant Attorney General, for plaintiff.

*Thomas R. DiLuglio, John E. Migliaccio,* for defendant.