371 A.2d 1048.

STATE *vs.* RICHARD ST. PIERRE.

APRIL 5, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

46

KELLEHER, J. The defendant, along with one Richard DeFreitas, is charged in a five-count indictment with having committed several infractions of the law, all of which relate to the July 7, 1970 holdup of a credit union located in the city of Pawtucket. There are two counts in the indictment that are pertinent to this appeal. One charges the defendant with being an accessory before the robbery, while the other charges him with receiving stolen goods. Prior to the Superior Court jury trial, the trial justice granted the state's motion to sever the two counts so that as a result the only count tried before the jury related to the receipt of stolen goods. The jury returned a guilty verdict, and the defendant in his appeal raises a series of questions which relate to the statute of limitations, the severance of the two counts, and certain evidentiary rulings.

The bulk of the prosecution's case is based on the testimony of two participants in the holdup operation, James E. Gardner and Joanne Raniello, who gave their testimony in exchange for the state's promise that they would be immune from prosecution for their participation in the robbery. St. Pierre's codefendant, DeFreitas, an alleged participant in the actual holdup, was not in court because he was incarcerated in Connecticut awaiting trial on a murder charge.

The state's evidence indicated that St. Pierre owned and operated a cocktail lounge that was located on Broadway in Pawtucket just about a quarter of a mile away from the credit union. St. Pierre was one of the credit union's customers. In late June 1970 he summoned De-Freitas, Gardner, and Raniello to his place of business and proceeded to tell them the advantages of robbing his bank. St. Pierre suggested that if the trio was willing to undertake this enterprise, he would furnish them with an apartment, which would serve as a base of operation before the holdup and a sanctuary once the deed was done. His fee as finder, consultant, and planner was to be a percentage of the take. The fee was to be deposited in one of the drawers in the apartment's kitchen.

Disguises and guns were gathered, the area was reconnoitered, a getaway car was stolen, and minutes before the holdup began Raniello entered the credit union to make sure the credit union's vault was open. Gardner and De-Freitas robbed the credit union and returned to St. Pierre's apartment where Raniello was there awaiting them. When the trio left the apartment, they placed St. Pierre's fee in the designated drawer. The fee amounted to $900. St. Pierre met Gardner a week after the robbery and thanked him for the fee.

St. Pierre testified in his own defense and denied having anything to do with the robbery. He admitted that he knew DeFreitas and Raniello socially and found them to be "very nice people." He conceded that when Raniello had been indicted for another robbery, he had furnished $5,000 bail to secure her release. St. Pierre told the jury that his acquaintanceship with Gardner merely consisted of meeting him on two occasions and at no time did these encounters concern the credit union holdup. With this brief resume of the evidence in hand, we now proceed to the consideration of the legal issues.

St. Pierre first asserts that his conviction must be reversed. He claims that his prosecution was barred by the statute of limitations, G.L. 1956 (1969 Reenactment) §12-12-17, because the receiving stolen goods count was instituted more than 3 years after the commission of the offense. The pertinent statute provides as follows:

> "No person shall be convicted of any offense, except, treason against the state, murder, arson, burglary, counterfeiting, forgery, robbery, larceny, rape, or bigamy, either as a principal or as an accessory, unless indictment be found or an information filed against him therefor within three (3) years from the time of committing the same."

The defendant contends that the crime of receiving stolen goods is not specifically excepted from the 3-year limitation period, and, accordingly, his conviction cannot stand.

The nub of the problem here is whether or not receiving stolen goods shall be "larceny" for the purpose of the statute of limitations. Section 11-41-2 provides in pertinent part: "Every person who shall fraudulently receive any stolen money * * * knowing the same to be stolen *shall be deemed guilty of larceny,* although the person who stole the same may not have been prosecuted or convicted therefor * * *." (Emphasis added.) The state refers us to *Williams* v. *Smith,* 28 R.I. 531, 68 A. 306 (1907), as authority for the proposition that the language "shall be deemed guilty of larceny" within the above statute contemplates that the Legislature intended said language not only for purposes of punishment but also for the purpose of making the offense an exception to the criminal statute of limitations.

In *Williams,* the plaintiff sued the defendant under a civil statute allowing recompense to victims of crime against the wrongdoer. The plaintiff alleged that the defendant had embezzled funds from him. The defendant's response was that the suit was barred because he had not

50

been prosecuted for the alleged crime within 3 years of the incident. The embezzlement statute at that time provided one who embezzled "* * * shall be deemed guilty of larceny, and may be tried, sentenced and punished as for any other larceny." General Laws 1896, ch. 279, §16. The court in *Williams* said that this language brought embezzlement within the larceny exception for purposes of the statute of limitations. *Williams* v. *Smith, supra* at 537, 68 A. at 309.

St. Pierre claims that the *Williams* case is not controlling here because the court was construing broader statutory language than that with which we are confronted here. Specifically, he emphasizes the language, "and may be tried, sentenced and punished as for any other larceny,"[1] as the controlling language that resulted in the *Williams* decision. Whether or not the absence of this phrase from the "receiving" statute precludes prosecution therefor after a 3-year period requires a brief digression into the corollary interpretation of "shall be deemed guilty of larceny." As we digress, we shall keep in mind the rule of construction regarding statutes limiting prosecution. Such statutes shall be liberally construed in favor of the defendant and strictly against the state. *State* v. *Patriarca*, 71 R.I. 151, 162-63, 43 A.2d 54, 59 (1945).

In *O'Brien* v. *Moskol*, 45 R.I. 486, 123 A. 568 (1924), the plaintiff sued the defendant under a civil statute providing "* * * whenever any person shall be guilty of larceny, he shall be liable to the owner of the money or articles taken for twice the value thereof, unless the same be restored, and for the value thereof in case of restoration." General Laws 1923, ch. 333, §16. Moskol had re-

---

[1] This language was deleted from the statute by P.L. 1915, ch. 1258; G.L. 1923, ch. 397, §16. The statute thus ended, as it does today, one who "* * * shall take or secrete the same with intent to embezzle or fraudulently to convert the same to his own use, shall be deemed guilty of larceny."

ceived the stolen property and argued that he was not "guilty of larceny," ergo there was no cause of action against him based upon the statute. The court responded by saying: "The fraudulent receiver of stolen goods, knowing the same to be stolen, shall be deemed guilty of larceny. Section 13, Chapter 345, Gen. Laws 1909, now Section 13, Chapter 397, Gen. Laws 1923. The above provision of Section 16, Chapter 333, Gen. Laws 1923, applies to such receiver as a person guilty of larceny." *O'Brien* v. *Moskol, supra* at 490, 123 A. at 570; *accord, DaCosta* v. *Rose,* 70 R.I. 163, 37 A.2d 794 (1944) (embezzlement). Accordingly, the Legislature intended to treat those statutory crimes deriving out of common law larceny (e.g. embezzlement, false pretenses, receiving stolen goods) as "larceny" for all purposes except supplying proof of the elements giving rise to each offense. *Brady* v. *Norwich Union Fire Ins. Soc'y, Ltd.,* 47 R.I. 416, 418, 133 A. 799, 800 (1926).

This conclusion is buttressed by the fact that statutes *in pari materia* should be considered together in order that they may be in harmony with each other and consistent with their general scope and purpose. *Pickering* v. *American Employers Ins. Co.,* 109 R.I. 143, 282 A.2d 584 (1971); *Providence Teachers Union, Local 958* v. *School Comm.,* 108 R.I. 444, 276 A.2d 762 (1971). The crimes of stealing, embezzlement, receiving stolen goods, and false pretenses have been on the statute books at least since the days when the Rhode Island Constitution became operative in 1843. The Public Laws of 1844 contain a compilation of the laws that were on Rhode Island's books at that time. The compilation contains "An Act concerning Crimes and Punishments" and an examination of §§34, 35, 37, and 43 makes it obvious that a conviction for a theft or a receipt of stolen property or a receipt of money under false pretenses or an embezzlement was to be considered as one for larceny. Section 117 relates to the

**52**

statute of limitations for criminal proceedings and is identical in all its pertinent parts to §12-12-17. It is clear from a historical review of the criminal statutes that the General Assembly has always classified those possessory offenses to which we have just referred as larceny. This classification was and is entirely within the legislative prerogative. It also follows that the term "larceny" as it appears in §12-12-17 includes within its ambit those statutory offenses which the Legislature has said will be considered as larceny. Thus, even if we give a strict construction to the word "larceny" as it appears within §12-12-17, we cannot justify construing the phrase "deemed guilty of larceny" so that it would not mean larceny for the purposes of §12-12-17.

Indeed, in *State* v. *Patriarca, supra,* this court ruled that the murder exception to the statute of limitations did not encompass one who was charged with being an accessory and, in responding to the state's argument that the case was similar to *Williams,* observed: "If, in the instant case, our statute declared that accessories before the fact *shall be deemed to be principals,* then the reasoning upon which the decision in the *Williams* case rests would be applicable, but our statute does not contain such language." (Emphasis added.) *State* v. *Patriarca, supra* at 159, 43 A.2d at 58.[2] The receiving statute does contain such language, and, consequently, St. Pierre's prosecution is not subject to the 3-year period of limitations.

St. Pierre next contends that the trial justice abused his discretion in "severing" the accessory count. To begin with, this is not a case of prejudice resulting from a sever-

---

[2] Apparently in response to the *Patriarca* decision, the Legislature subsequently amended the statute of limitations. The amendment provides that accessories, as well as principals. to certain delineated crimes will not be covered by the 3-year bar to prosecution. Public Laws 1950, ch. 2463, §1; G.L. 1956 (1969 Reenactment) §12-12-17.

ance or a joinder of codefendants at trial. Here, if the severance results in prejudice, the prejudice is of the *in futuro* variety. It arises when and if the accessory count comes on for trial. Such prejudice may come in the form of double jeopardy,[3] the denial of a speedy trial,[4] or prosecutorial harassment of a defendant via multiple prosecutions arising out of the same transaction.[5] Accordingly, even if St. Pierre established that the trial justice erred in not permitting both counts to go to trial, it would in no way affect his present conviction. At most he should seek relief if and when the state seeks to bring him to trial on the accessory count.

At the trial Raniello and Gardner were permitted to tell the jury of their preholdup and postholdup conversations with St. Pierre as well as describe the actual holdup. St. Pierre contends that much of this testimony was irrelevant and prejudiced his case. However, this court has stated that the determination of whether relevant evidence is so prejudicial that its prejudice overrides the relevance is a question that is directed to the sound discretion of the trial justice. *State* v. *Fontaine,* 113 R.I. 557, 560, 323 A.2d 571, 573 (1974).

We see no merit to this facet of St. Pierre's appeal. He denied any participation in the robbery. His receipt of the credit union's cash had to be established by circumstantial evidence. The witnesses' testimony was crucial in establishing (1) that there had been a robbery, (2) St. Pierre's knowledge of this fact, (3) his intent to share in the pro-

---

[3]*See Ashe* v. *Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *State* v. *Brown,* 262 Ore. 442, 497 P.2d 1191 (1972).

[4]*See Tate* v. *Howard,* 110 R.I. 641, 296 A.2d 19 (1972).

[5]*State* v. *Gregory,* 66 N.J. 510, 333 A.2d 257 (1975); *People* v. *Golson,* 32 Ill 2d 398, 207 N.E.2d 68 (1965), *cert. denied,* 384 U.S. 1023, 86 S.Ct. 1951, 16 L.Ed.2d 1026 (1966).

ceeds, and (4) his actual receipt of the money. In the light of the necessity of establishing these factors, we cannot fault the trial justice in permitting Raniello and Gardner to testify as they did.

St. Pierre's last contention relates to testimony which was presented in his behalf. He presented two character witnesses. One was a family friend, who told the jury that St. Pierre's reputation for truth and veracity was "very good." The other witness, who was the president of another credit union in Pawtucket, testified by way of deposition. The trial justice would not permit the jury to hear the deponent's reply when he was asked for his opinion of St. Pierre's veracity. The trial justice, in sustaining the state's objection to this portion of the deposition, observed that most jurisdictions limit the testimony of character witnesses to the subject's general reputation in the community for the particular trait in issue. St. Pierre concedes that the trial justice's decision is in conformity with the majority rule but asks that we join the minority who believe that a character witness' opinion which is based upon personal contact is entitled to more respect than testimony which is based upon what is heard about a witness' reputation. Connecticut is one jurisdiction that permits opinion testimony in this area. *See State* v. *Gelinas,* 160 Conn. 366, 279 A.2d 552 (1971).

We see no necessity for making a choice. It is a basic proposition of law that before character evidence bearing on the witness' truthfulness can be received, there must be evidence in the record which indicates that his credibility has been attacked. McCormick, *Law of Evidence* §49 at 102 (2d ed. 1972); Wigmore, *Evidence* §1104 (Chadbourn rev. ed. 1972). Credibility is attacked by the introduction of "* * * evidence of bad reputation, conviction of crime, or eliciting from the witness on cross-examination acknowledgement of misconduct which has not resulted in a con-

viction * * *. Moreover, a slashing cross-examination may carry strong accusations of misconduct and bad character, which the witness' denial will not remove from the jury's mind." McCormick, *supra*, §49 at 104. Here the prosecutor made no such effort. Since St. Pierre's credibility was never attacked, there was no necessity to support or rehabilitate his testimony by seeking the deponent's opinion as to whether St. Pierre was a "truthful person." Having in the mind the cross-examination undergone by St. Pierre, the opinion testimony was totally irrelevant.

The defendant's appeal is denied and dismissed, and the judgment of conviction is affirmed.

Petition for reargument denied.

*Julius C. Michaelson*, Attorney General, *Nancy Marks Rahmes*, Special Asst. Attorney General, for plaintiff.

*William F. Reilly*, Public Defender, *Barbara Hurst*, Asst. Public Defender, for defendant.