DECISION
The present case arises out of an alleged incident of child abuse which, by all accounts, occurred on January 5, 2005. Based on the alleged incident, the State filed a criminal information with the Rhode Island Family Court on November 14, 2007 that formally charged the Defendant with a violation of G.L. 1956 § 11-9-5.3.[1] However, at the time the information was filed, Family Court jurisdiction over the underlying matter had been changed pursuant to the enactment of P.L. 2006, ch. 260, § 1 and P.L. 2006, ch. 290, § 1.[2] The legislation effectively transferred jurisdiction of child abuse offenses from the Family Court to the Rhode Island Superior Court. It is uncontroverted that the legislative acts were effective upon passage. It is also clear that no legislation addressed the existing statute of limitations relative to the change of jurisdiction during that legislative session. Additionally, it is clear that the legislative acts did not address situations where the alleged act of child abuse occurred before the change in jurisdiction took effect.[3] *Page 2 
Subsequently, on January 10, 2008, the Defendant moved to dismiss the charge pending in the Family Court. On May 1, 2008, the Defendant's motion was granted.[4] Four weeks later, on May 29, 2008, the State filed a new criminal information with the Rhode Island Superior Court.[5] In response, the Defendant moved to dismiss the re-filed information. Defendant filed and argued the motion before the Superior Court on October 7, 2008, and the Court took the matter under advisement.
ARGUMENTS OF DEFENDANT AND STATE
Essentially, Defendant argues that the pending information is untimely and dismissal is proper pursuant to the Rhode Island criminal statute of limitations, G.L. 1956 § 12-12-17, [6] as more than three years have elapsed between the date of the alleged incident and the filing of the second criminal information. The statute of limitations is an affirmative defense that is waived unless it is raised at or before trial. State v. Lambrechts, 585 A.2d 645, 648 (R.I. 1991). Defendant argues that a timely prosecution needs to be commenced by the filing of an information within three (3) years of the alleged incident and the mere filing of a criminal complaint in the Family Court will not suffice. State v. Jennings, 944 A.2d 171 (2008). Defendant further argues that the filing of the criminal information in the Family Court did not toll the statute of limitations because the Family Court had been divested of jurisdiction at the *Page 3 
time the criminal information was filed. The State concedes thatJennings clearly holds that the operative filing for the commencement of a criminal prosecution is a charge by information. Id. at 175. However, the State contends that Jennings is silent as to the effect of the State's filing of a criminal information in the Family Court at a time when the Family Court had been divested of jurisdiction under the legislation of 2006 (discussed earlier) but upon an incident that had occurred before the jurisdiction had been vested in the Superior Court.
 ANALYSIS
The issue presently before this Court is whether the State's filing of the initial criminal information in the Family Court tolled the statute of limitations applicable to the underlying offense within the context of the specific facts of the instant matter. Rhode Island case law addressing the instant issue is notably sparse. In the absence of controlling state precedent, Rhode Island courts will look to other jurisdictions for guidance. Nationally, three different approaches have been employed in an effort to address somewhat similar situations: 1) Some jurisdictions have adopted statutes that expressly toll the statute of limitations on the filing of a defective information; 2) Some courts of other jurisdictions have held that the timely filing of an information subsequently found to be defective does not operate to stop the running of the statute of limitations; and, 3) Some courts in other jurisdictions have held that the timely filing of an information subsequently found to be defective does operate to stop the running of the statute of limitations.[7] No specific applicable statute exists in Rhode Island leaving this Court to analyze the competing approaches taken by other courts in the absence of a controlling statute.[8] *Page 4 
 PURPOSE OF STATUTES OF LIMITATION
A limitation statute "is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past."Toussie v. U.S., 397 U.S. 112, 114-15 (1970). To this end, constitutional mandates[9] and limitations statutes "work in tandem to prevent pre-trial delay" in an effort to "shield defendants from endless anxiety about possible prosecution" while attempting to "afford society protection from unincarcerated offenders." United States v. Levine,658 F.2d 113, 119 (3d Cir. 1981).
However, criminal statutes of limitations are not constitutional in nature. Rather, they are optional legislative enactments. See Thomas J. Gardner Terry M. Anderson, Criminal Law, 153 (9th ed. 2006). The United States Supreme Court has described these enactments as statutory endeavors that "represent legislative assessments of relative interests of the State and the defendant in administering and receiving justice; they `are made for the repose of society and the protection of those who may (during the limitation) . . . have lost their means of defence.'" United States v. Marion, 404 U.S. 307, 322, (1971) (quotingSt. Louis Public Schools v. Walker, 9 Wall. 282, 76 U.S. 282, 288, (1869)). More specifically, the Rhode Island Supreme Court has noted that criminal statutes of limitation "are intended to foreclose the potential for inaccuracy and unfairness that stale evidence and dull memories may occasion in an unduly delayed trial." Lambrechts,585 A.2d at 646 (citing Levine, 658 F.2d at 127) (emphasis in original). As such, a statute of limitation does not shield a defendant from prosecution, but merely places permissible time limits on prosecution. Id. *Page 5 
 CONSIDERATIONS UNDER RHODE ISLAND CONSTITUTION
The Constitution of the State of Rhode Island, Article I, Section 2
provides in pertinent part that "[a]ll free governments are instituted for the protection, safety, and happiness of the people. All laws, therefore, should be made for the good of the whole." The same Section further provides that "[n]o person shall be deprived of life, liberty or property without due process of law. . . ." Additionally, Article I, Section 10 states:
 "In all criminal prosecutions, accused persons shall enjoy the right to a speedy and public trial, by an impartial jury; to be informed of the nature and cause of the accusation, to be confronted with the witnesses against them, to have compulsory process for obtaining them in their favor, to have the assistance of counsel in their defense, and shall be at liberty to speak for themselves; . . . ."
Accordingly, in deciding the issue as a matter of criminal procedure, this Court will endeavor to balance the rights of the public against the rights of the accused.
 COURTS THAT HAVE NOT ALLOWED TOLLING
Some jurisdictions that lack a statute expressly tolling the limitations period upon the issuance of a defective indictment or information have adopted the view that the limitations period will continue to run pending the issuance of a valid indictment or information. See 18 A.L.R. 4th 1202, § 17(b). Addressing this issue, the Supreme Court of Iowa has stated that "in the absence of any statute saving such right to the state, the running of the statue of limitations ought not to be interrupted or suspended by the return and pendency of an indictment upon which no valid conviction or judgment can be founded." State v. Disbrow, 130 Iowa 19, 106 N.W. 263, 266 (1906). The court reasoned that the plain language of the applicable statue of limitation "admits of no other conclusion than the one we have indicated." Id.
Other courts have reached the same conclusion, explicitly grounding their approach to the issue in statutory construction. In State v.Fogel, 16 Ariz.App. 246, 492 P.2d 742 (1972), the *Page 6 
court noted as a preliminary matter that "[s]tatutes of limitation are to be construed liberally in favor of the accused and against the prosecution." Id. at 248 (citing U.S. v. Moriarty, 327 F.Supp. 1045
(E.D. Wis. 1971) and Waters v. United States, 328 F.2d 739
(10th Cir. 1964)). Consequently, the court held that the Arizona statue of limitation was not tolled by the return of an invalid indictment, reaching that conclusion by "[a]pplying the rules of construction previously mentioned." Id. After citing the same canon of statutory construction as the Fogel Court, the Michigan Court of Appeals reached a similar conclusion in People v. Dalton, 91 Mich.App. 246, 283
N.W.2d 710, (1979), stating that "[s]ince Michigan has no statute specifically providing for tolling while [an] improper indictment [is] pending, the statute continue[s] to run." Id. at 713.
 COURTS THAT HAVE ALLOWED TOLLING
A contrary view holds that in the absence of a controlling statute, the return or filing of a timely indictment or information subsequently found defective or dismissed will operate to stop the running of the statute of limitations. See 18 A.L.R. 4th 1202, § 17(a). In adopting this position, the Connecticut Court of Appeals, inState v. Saraceno, 545 A.2d 1116, 1125 (1988), reasoned:
 "Although we can find no Connecticut case to guide us, we are again persuaded by the treatment of this issue by other courts, which have concluded that an original information can, under certain circumstances, toll the statute of limitations for a separate and distinct offense alleged for the first time in a superseding information.
 Because "[s]tatutes of limitations are intended to ensure, inter alia, that a defendant receives notice, within a prescribed time, of the acts with which he is charged, so that he and his lawyers can assemble the relevant evidence before documents are lost, memory fades, etc."; United States v. O'Neill, 463 F.Supp. 1205, 1208
(E.D.Pa. 1979); the focal point of a court's scrutiny on such a claim as this is a determination of whether the superseding information *Page 7 
"broaden[s] or substantially amend[s] the charges made in the first [information]." United States v. Grady, 544 F.2d 598, 602 (2d Cir. 1976). In other words, "`if the defendant was [charged] within time, then approximately the same facts may be used for the basis of [a superseding information]. . . .'" United States v. Charnay, 537 F.2d 341, 354 (9th Cir.), cert. denied, 429 U.S. 1000, 97 S.Ct. 528, 50 L.Ed.2d 610 (1976), quoting Mende v. United States, 282 F.2d 881, 883-84 (9th Cir. 1960), cert. denied, 364 U.S. 933, 81 S.Ct. 379, 5 L.Ed.2d 365
(1961)."
Similarly, in State v. Corley, 251 S.W.3d 416, 421 (Mo.App.S.D. 2008), after analyzing several cases in addition to the cases cited inSaraceno, the Missouri Appeals Court reasoned:
 "From these cases we can derive several key factors for a court to examine in attempting to determine whether a previously charged offense can serve to toll the applicable statute of limitation for a later charged offense. In determining for statute of limitation analysis purposes whether such charges constitute the "same offense," we look to see if: 1) the later information or indictment contains essentially the same facts as those included in the original charging document so as to demonstrate that the later charged offense arose out of the identical act or transaction; Lamar, 249 S.W. at 656; Little, 60 S.W.2d at 84; Pryor, 134 S.W.2d at 1085; 2) the charge contained in the later charging document is derived from the same statute as the original charge; Pryor, 134 S.W.2d at 1085; Reeves, 726 S.W.2d at 369; Rotter, 958 S.W.2d at 63-64; and, finally, 3) the later charged offense is a different level of criminal offense from that originally charged; i.e., one a felony and one a misdemeanor. Pryor, 134 S.W.2d at 1085."
Consequently, the Missouri Court held that the charge contained in an original information was the "same offense" as the alternative charges brought against Defendant in a subsequent information for purposes of determining whether the applicable statute of limitation was tolled by the original filing. Id.
 PRECISE WORDING OF STATUTE OF LIMITATIONS
The Rhode Island criminal statute of limitations, G.L. 1956 § 12-12-17, reads in relevant part: *Page 8 
 "(c) The statute of limitations for any other criminal offense shall be three (3) years unless a longer statute of limitations is otherwise provided for in the general laws."
Well-established canons of construction hold that statutory provisions relating to criminal procedure (as distinguished from those provisions pertaining to substantive rights) "are given a somewhat less rigid construction." 3 Norman J. Singer, Statutes and StatutoryConstruction, § 59:9 (6th ed. 2001). Additionally, the Rhode Island Supreme Court has previously held that statutes of limitation "are interpreted liberally in favor of the accused" and against the State. State v. St. Pierre, 118 R.I. 45, 50, (1977) (citingState v. Patriarca, 71 R.I. 151, 162-63 (1945)).
However, the currently operative language of § 12-12-17 was implemented in March of 1988 with the General Assembly's enactment of P.L. 1988, ch. 16, § 1, which substantially rewrote the text of § 12-12-17. Prior to the 1988 revisions, the relevant portion of § 12-12-17 read as follows:
 "Period of limitations on minor offenses * * * No person shall be convicted of any offense, except * * * murder, arson, * * * rape * * * unless indictment be found or an information filed
against him therefor within three (3) years from the time of committing the same." (Emphasis added.)
Notably, the Rhode Island statute of limitation, as currently constituted, does not expressly condition the tolling of the statute upon the actual filing of an information, defective or otherwise. Furthermore, the change in the statute occurred after the April 5, 1977 date of the St. Pierre decision. Moreover, it is instructive that in § 12-12-18, the Rhode Island Legislature did provide for extending the limitation period in cases of "theft, loss, or destruction" of the indictment or information. Absent any explicit indication that the legislature still intended the actual filing of an information despite the changes incorporated in the 1988 revisions to § 12-12-17, this Court should address the issue by construing the enactment so as to effectuate the intent *Page 9 
of the Legislature. Matter of Falstaff Brewing Corp., 637 A.2d 1047,1049-50 (R.I. 1994). In so doing, this Court examines statutory provisions in their entirety, attributing to the act the meaning most consistent with the policies and purposes of the Legislature.Id.; Brennan v. Kirby, 529 A.2d 633, 637 (R.I. 1987). We glean the intent and purpose of the Legislature "from a consideration of the entire statute, keeping in mind [the] nature, object, language and arrangement" of the provisions to be construed, Algiere v. Fox,122 R.I. 55, 58 (1979), and by giving words their plain and ordinary meaning.Town of East Greenwich v. O'Neil, 617 A.2d 104, 108 (R.I. 1992).
In so construing, the Rhode Island Supreme Court has, in the past, attempted to adhere to the "fairest and most rational method" of interpreting laws as set forth by Sir William Blackstone in his Commentaries of 1758. 1 Sharswood's Blackstone's Commentaries, Laws ofEngland 58 (1860). Blackstone delineated five "signs" that constitute "the most natural and probable" indices to the will of a legislature. According to Blackstone, these signs are revealed by means of
 "words * * * understood in their usual and most known signification [and in] their general and popular use. * * * If words happen to be still dubious, we may establish their meaning from the context. * * * As to the subject matter, words are always to be understood as having a regard thereto * * * [with] expressions directed to that end. * * * As to the effects and consequence, the rule is, that where words bear either none, or a very absurd signification, if literally understood, we must a little deviate from the received sense of them. * * * But, lastly, the most universal and effectual way of discovering the true meaning of a law * * * is by considering the reason and spirit of it." In re Advisory to the Governor (Judicial Nominating Comm'n), 668 A.2d 1246, 1248-1249, (R.I. 1996) (internal citations omitted) (emphasis in original).
This Court notes that after the 1988 revision to § 12-12-17, an express requirement of finding indictment or filing of information was removed from the statute. The present statute merely indicates that the statute of limitations for the instant offense shall be three years. The *Page 10 
present version of § 12-12-17, despite its changes from earlier versions of the same statute, is silent with regard to whether tolling is permissible in the context of the case now before this Court. Additionally, the 2006 enactment, (discussed supra and infra in the Conclusion), vesting jurisdiction for the offense in the Rhode Island Superior Court, is also silent as to any effects on the statute of limitations. Moreover, the 2006 enactment does not address situations where the alleged offense occurred before the effective date of the 2006 legislation.
 CONCLUSION
This Court considers the "reason and spirit" of the current version of G.L. 1956 § 12-12-17, including the removal of the express requirement for finding indictment or filing of information under said statute. The Court also considers the fact that the information filed in the Superior Court relies on the exact same alleged act, the same statute, and involves the "same offense" even though the most recent information filed in the Superior Court involves a charge of second degree child abuse (compared to the original charge of first degree child abuse). This Court also considers the history and purpose of statutes of limitation as well as the reasoning of courts in Connecticut and Missouri (discussed earlier). This Court finds that the Defendant will not be called upon to answer any allegations in the re-filed information that he has not already been apprised of by way of the initial information. The factual underpinnings of the subsequent information are the same facts as those that gave rise to the original information. Accordingly, the Defendant cannot make a colorable assertion that he was improperly noticed with respect to the currently pending charge. Furthermore, the Defendant has made no allegation of a loss or degradation of evidence between the dates of January 6, 2008 (the date Defendant asserts the statutory limitation period expired) and May 29, 2008 (the date the jurisdictionally proper information was re-filed). Absent a claim that the intervening 144 day period has negatively *Page 11 
impacted his ability to prepare an effective defense, this Court finds that the Defendant was not significantly prejudiced by the delay in the filing of a jurisdictionally proper criminal information. Balancing the rights of the public against those of the accused, this Court holds that the State's initial filing of the criminal information with the Family Court, though jurisdictionally defective, did toll the statute of limitations. Consequently, the Defendant's motion to dismiss is denied.
[1] Defendant was charged with first degree child abuse.
[2] While there are two (2) Public Laws citations, they are the respective Senate and House versions of the legislation which are identical.
[3] Public Laws 2006, ch. 260 provided, in pertinent part:
SECTION 1. Section 11-9-9 of the General Laws in Chapter 11-9 entitled "Children" is hereby amended to read as follows:
 11-9-9. Powers of family court. — Where in sections 11-9-1 — 11-9-8 any authority is vested in any court, the authority vested in the court or courts mentioned is transferred to the family court. The family court shall have exclusive original jurisdiction over any and all complaints and offenses set forth in sections 11-9-1 — 11-9-8, 11-9-12, 11-9-14, and 11-9-15, and shall have the authority to impose sentence as set forth in chapter 1 of title 14. Notwithstanding the provisions of this section, jurisdiction for violations of sections 11-9-1, 11-9-1.1, 11-9-1.2, and 11-9-1.3, and 11-9-5.3 shall be vested in the superior court.
SECTION 2. This act shall take effect upon passage.
[4] The dates and events are taken from the official docket of the Family Court matter, FC 2005 0123 CR.
[5] The information filed in the Rhode Island Superior Court charged Defendant with second degree child abuse, an offense less serious than the original information.
[6] Section 12-12-17 provides in pertinent part:
 ". . . (c) The statute of limitations for any other criminal offense shall be three (3) years unless a longer statute of limitations is otherwise provided for in the general laws. . . ."
[7] See generally Janet Boeth Jones, J.D., Finding or return ofindictment, or filing of information, as tolling limitation eriod, 18 A.L.R. 4th 1202.
[8] Id. at § 17(a) and § 17(b).
[9] U.S. Const. amend. VI.