**STATE**

v.

**Bernard McMAUGH and Ann McMaugh.**

No. 85–307–C.A.

Supreme Court of Rhode Island.
June 30, 1986.
Reargument Denied July 17, 1986.

---

Arlene Violet, Atty. Gen., Thomas Dickinson, Sp. Asst. Atty. Gen., for plaintiff.

Ira L. Schreiber, Guy R. Bissonnette, Schreiber Law Associates, Providence, Joseph A. Capineri, Capineri & Crowley, Pawtucket, John A. O'Neill, Jr., Providence, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

The defendants, Bernard and Ann McMaugh, are husband and wife. They are before us on their appeal from judgments of conviction entered after a Superior Court jury found them guilty of charges set forth in a 1983 joint indictment. Specifically, both the defendants were convicted of (1) murder, (2) conspiracy, and (3) carrying a pistol without a license. Additionally, Bernard McMaugh was convicted of assault with a dangerous weapon.

On appeal defendants raise the following issues: (1) whether defendants were denied their constitutional right to a speedy trial; (2) whether the trial justice erred in not severing the cases sua sponte; (3) whether the trial justice erred in denying defendants' motions for judgments of acquittal and for a new trial and (4) whether defendant Bernard was properly indicted and convicted as a principal.

The facts that gave rise to this case are as follows. On the evening of August 15, 1980, Bernard and Ann McMaugh went to the Causeway Lounge in Smithfield, Rhode Island. Shortly after arriving, Ann was approached by the victim, one Gregory J. Dube. When Bernard returned from the restroom, words were exchanged between him and the victim; the two men left the lounge, and an argument ensued. Bernard returned to his wife inside the lounge, and the two left shortly thereafter.

According to testimony received at trial, Bernard and Ann next returned to their home, where they retrieved two guns, a .41–caliber magnum revolver and a .22–caliber semiautomatic pistol. The two defendants then returned to the Causeway Lounge at approximately 2 a.m. and waited in the parking lot. Bernard testified at a pretrial hearing that he returned to the Causeway Lounge to visit a friend, one Joseph Foster, and that he took the weapons out of fear of the victim.

Robert T. Croft, Jr., a friend of Gregory Dube's, was with the victim when he left the lounge at approximately 2:10 a.m. He testified that the dispute between Dube and Bernard had begun a few days before the shooting, apparently owing to Bernard's belief that Dube was trying "to score his wife." Croft testified that when he, Dube, and some other young men left the lounge at closing time, he noticed a green Pinto parked along the street with Bernard and Ann McMaugh seated inside. The group of young men went across the street to play cards, but the game lasted only ten minutes. As the men were departing, Bernard called Dube over to the Pinto. Jeffrey Mansi, one of the witnesses to the shooting, testified that he heard Dube say, "[w]ait a minute, I got a bone to pick with this guy." He stated that Dube approached the car, and an argument ensued. He testified that he heard a shot, saw Dube move a bit, and one or two seconds later heard a second shot after which Dube fell to the ground. The defendants' car then raced away from the scene.

The defendants' version of the shooting is as follows. They claim that Dube approached the automobile and issued threats at Bernard, who then fired a shot from the magnum to frighten Dube. However, the shot had a contrary effect, and Dube reached into the car through the driver's

window in an effort to grab Bernard. Ann testified that she grabbed the .22–caliber pistol to ensure that Dube could not gain possession of it, and that during an attempt to throw the gun into the back seat it accidentally discharged, killing Dube.

Several firearms experts testified at defendants' trial. One such expert, Paul Schrecker of the Federal Bureau of Investigation, conducted a "dead weight" test on the .22–caliber pistol from which the fatal bullet was fired. This test revealed that the trigger had a pull that required 2½ to 3 pounds of pressure in order to fire. Schrecker also conducted a test to determine whether the .22–caliber pistol could discharge accidentally. This test revealed that the weapon could not fire unless the trigger was pulled manually.

An indictment was returned against both defendants in January 1983. After myriad continuances and postponements, trial commenced in February 1985. Both defendants were found guilty.

## I

The defendants contend that the trial justice erred in refusing to dismiss the action pursuant to either Rule 48(b) of the Superior Court Rules of Criminal Procedure[1] or the Sixth Amendment of the United States Constitution. We disagree.

■ Rule 48(b) provided that "[i]f there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information, or complaint." However, to demonstrate entitlement to the protection afforded an accused under Rule 48(b), a defendant bore the threshold burden of establishing that no portion of the delay was attributable to his or her actions. *State v. Cole,* 500 A.2d 531, 533 (R.I.1985); *State v. Long,* 488 A.2d 427, 436 (R.I.1985); *State v. Brown,* 486 A.2d

595, 601–02 (R.I.1985). Barring satisfaction of this requirement, a Rule 48(b) dismissal was unwarranted. *State v. Adams,* 481 A.2d 718, 726–27 (R.I.1984); *State v. Macaskill,* 475 A.2d 1024, 1028 (R.I.1984); *State v. Baccaire,* 470 A.2d 1147, 1150 (R.I.1984).

■ In the instant case, neither defendant is blameless for at least a portion of the delay. While it is true that this case was passed for trial on numerous occasions at the request of either the court or the state, the record also reveals that Ann McMaugh was granted a continuance in January 1985 because her attorney was on trial in another state and therefore unable to appear on her behalf in Superior Court. Although this court is cognizant of the fact that scheduling conflicts are oftentimes unavoidable, a defendant is not thereby relieved of the burden of showing nonculpability for any portion of the delay. We therefore find that the trial justice acted properly in denying the Rule 48(b) motion.

The defendants also assert that their right to a speedy trial, as guaranteed by the Sixth Amendment of the United States Constitution and article 1, section 10, of the Rhode Island Constitution, was violated. Conversely, the state contends that the trial justice's failure to dismiss the case on this ground was proper and fully in accordance with the requirements promulgated by the United States Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

In that case, the Court identified four factors that courts should consider in deciding whether there has been a violation of a defendant's right to a speedy trial:

"A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which

---

1. On November 21, 1984, a majority of the justices of the Superior Court signed an order repealing Super.R.Crim.P. 48(b). A majority of the members of this court, in accordance with G.L.1956 (1969 Reenactment) § 8–6–2, as amended by P.L.1975, ch. 222, § 1, approved the repeal. However, since it was determined below that defendants did not satisfy the requirement of showing nonculpability for part of the delay, we need not discuss the issue of whether Rule 48(b) should have been applied retroactively.

courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 116–17.

In the instant case, an application of the factors set forth in *Barker v. Wingo, supra,* and our own cases addressing a defendant's right to a speedy trial under our constitution, *State v. Paquette,* 117 R.I. 505, 368 A.2d 566 (1977); *State v. Crapo,* 112 R.I. 729, 315 A.2d 437 (1974); *Tate v. Howard,* 110 R.I. 641, 296 A.2d 19 (1972), convinces us that defendants' rights to a speedy trial were not abridged. Although the record reveals a delay which is adequate to compel us to investigate the other factors outlined in *Barker v. Wingo, supra,* we remain aware that part of the delay was occasioned by the fact that Ann McMaugh changed counsel on two separate occasions and requested a continuance in January 1985.

■ Since the right to a speedy trial was asserted by defendants—and in light of the fact that neither the state nor defendants are free of culpability for the plethora of delays—the scope of our inquiry on this issue is limited to an investigation of whether defendants' were somehow prejudiced by the protracted nature of these proceedings.

■ The defendants contend that the dilatory tactics of the state prevented them from securing the presence of one Joseph Foster, who was allegedly in Texas at the time of trial and therefore unavailable to testify. During the argument on the motion to dismiss, defense counsel stated that Foster would testify, if he were present, that Bernard had planned to return to the Causeway Lounge to meet him. However, when ruling on the motion to dismiss, the trial justice noted that the mere allegation that Foster would so testify, standing alone, was "too meager" to grant the mo-

tion. She went on to question at what time the purported witness became unavailable and whether attempts had been made to subpoena him. Consequently, she concluded that there was no factual basis to make a finding that prejudice had in fact occurred.

We concur in the trial justice's decision. Although our decision might be different if defendants' had demonstrated that but for the delay, Mr. Foster would have been available, *see, e.g., United States v. Ewell,* 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966), the mere allegation of an unavailable witness is too speculative and clearly insufficient to tip the scales in favor of these defendants. Accordingly, after considering the factors outlined in *Barker v. Wingo,* and *State v. Paquette,* both *supra,* we are of the opinion that defendants' rights to a speedy trial were not abridged.

## II

The defendant Ann McMaugh argues that the trial justice committed error in denying the motion to sever her case for trial. Conversely, the state contends that said motion was properly declined because Ann chose to forego the severance in favor of the presentation of a joint defense.

On the day when the motion to sever was to be presented, Ann's attorney informed the trial justice that "[t]here's been a motion to sever on behalf of Ann McMaugh * * *. After consultation with my client, we decided that motion also should be passed. We are not going to pursue that." Although defendant concedes that she did inform the trial justice that she did not wish to proceed with the motion, she argues that the trial justice should have ordered a severance sua sponte. We find no merit to this argument.

■ When faced with similar issues in the past, we have noted that a defendant is bound by the strategic decisions advanced by counsel at trial, *State v. Austin,* 462 A.2d 359, 362 (R.I.1983), and that a defendant cannot on appeal divorce himself from

responsibility for his or her attorney's failure to raise or pursue issues at trial. *Carillo v. Moran*, 463 A.2d 178, 183 (R.I.1983). We have also held steadfast to the rule that "a matter may not be raised on appeal which was not initially presented and articulated in the trial court." *State v. Fogarty*, 433 A.2d 972, 974 (R.I.1981).

Moreover, defendant's assertion that the trial justice's erroneous failure to sever the cases sua sponte can be remedied at this level via the application of the plain-error doctrine is equally unfounded. As we noted in *State v. Williams*, 432 A.2d 667, 670 (R.I.1981) "Indeed, in promulgating rules of criminal procedure, Rule 52(b) of the Federal Rules of Criminal Procedure, which deals with plain error, was specifically deleted to conform to Rhode Island case law." *See State v. Quattrocchi*, 103 R.I. 115, 124, 235 A.2d 99, 104 (1967). The court in *Williams* went on to note that errors not asserted in the trial court will only be considered under extraordinary circumstances, such as where a defendant's basic constitutional rights have been abridged.

■ We find no such abridgement here. The defendants chose to pursue a joint defense, and their case was presented accordingly. Although this decision on the part of defendants may have been strategically unwise, we find no error in the trial justice's failure to compel the defendants to present their cases separately.

### III

The defendants next argue that the trial justice erred in denying their motions for judgments of acquittal because there was insufficient evidence to warrant a first-degree-murder verdict. They also contend that there was an insufficient evidentiary basis to convict them of conspiracy.

In this state, first-degree murder is defined by statute. General Laws 1956 (1981 Reenactment) § 11–23–1 provides in part:

"Murder.—The unlawful killing of a human being with malice aforethought is murder. Every murder perpetrated by poison, lying in wait, or any other kind of wilful, deliberate, malicious and premeditated killing * * * is murder in the first degree."

In the proceedings below, the key issue facing the triers of fact was whether the defendants' killing of the victim was premeditated. In denying the motion for judgment of acquittal, the trial justice reasoned as follows:

"I think it is clear that both defendants left a place where they had been having trouble, went home, maybe changing vehicles, maybe not, picked up two weapons, loaded, drove back to the Causeway Lounge, had two loaded weapons in the car and sat outside and waited for Dube. Now, remember, this was closing time. The suggestion that they were going to look for their friend, Foster, may or may not be true, but I think the jury is entitled to draw the inference that they were out to get Dube and teach him a lesson. These defendants were in a vehicle, clearly operable. If they were, in fact, fearful of Dube, one could draw the inference that they could have driven away. * * * What I am saying is that there is evidence, which, if believed by the jury, and I don't know if they're going to believe it or not, there is evidence that the defendants left the Causeway after some disagreement with Mr. Dube, that far from being afraid of Dube, which would make most people stay away, the defendants went home, they had the guns fully loaded with extra ammunition, they came back, they parked outside the Causeway, they waited, Dube came over to the car, and the defendant driver made no effort to drive away, and clearly, the jury has reason to conclude, if they believe the State's case, this was pre-planned murder in the first degree."

■ We find no error in the denial of the motion to acquit. Even though the evidence on the degree of premeditation was wholly circumstantial, this court has

consistently held that this type of evidence should be afforded equal weight with direct evidence. *State v. Romano,* 456 A.2d 746, 763 (R.I.1983). And from the testimony and evidence established at trial, malice aforethought and premeditation could be inferred from the course of conduct undertaken by both defendants on the evening of the killing. As the trial justice noted when reviewing the evidence, the state introduced sufficient evidence to justify a finding that the murder was preplanned. The defendants argued with the victim, left the lounge and obtained two weapons, then returned to the Causeway, where they lay in wait for Mr. Dube as the lounge closed. Moreover, Ann's version of the shooting, that the automatic weapon accidentally discharged as she was throwing it into the back seat, was clearly contradicted by the firearms and ballistics experts called by the state. Overall, one could readily conclude from the totality of the evidence presented at trial that this was a premeditated killing perpetrated with malice aforethought.

■■■■ We also find no merit in defendants' contention that there was insufficient evidence to justify a verdict of guilty of conspiracy to commit murder. Initially, we note that this issue was not even addressed at the trial level. When asked by the trial justice whether the motion for judgment of acquittal related to all counts, counsel for Bernard restricted the motion only to the murder counts, not challenging the conspiracy counts. For this reason alone, defendant is precluded from securing a reversal of his conviction on this count. *See State v. Ballard,* 439 A.2d 1375, 1388 (R.I.1982) (this court considers only those issues that have been raised in the court below). However, had this issue been addressed at the trial level, the result would be the same. The evidence in the record certainly supports the inference that when defendants' left their home, weapons in hand, and returned to the Causeway Lounge, an agreement had been reached to do bodily harm to the victim. When Dube approached defendants' automobile, they could easily

have left the scene. Instead, two shots were subsequently fired, one of which killed Dube. Viewing the evidence in the light most favorable to the prosecution and drawing inferences consistent therewith, the trial justice did not err in denying the motion for a judgment of acquittal.

## IV

We now turn to Ann McMaugh's claim that the trial justice erred in denying her motion for a new trial. She claims that there was no evidence from which one could conclude that she possessed the necessary degree of premeditation to be found guilty of first-degree murder. While conceding that she shot the fatal bullet, she submits that there was no evidence to support a finding that she had adequate time to develop a conscious design and intent to slay the victim. We disagree.

■■■■ When considering a motion for a new trial, the trial justice must independently judge and consider the material evidence and also assess the credibility of the witness. If the court determines that there is credible evidence sufficient to support a verdict of guilty beyond a reasonable doubt, the motion for a new trial must be denied. *State v. Caprio,* 477 A.2d 67, 73 (R.I.1984). Barring a finding that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong, this court will not reverse a trial justice's decision to deny a motion for a new trial. *State v. Watkins,* 448 A.2d 1260, 1267 (R.I. 1982). Here, the trial justice conducted a thorough review of the evidence, found the state's witnesses to be "quite credible," and concluded that the jury's verdict was amply supported by the evidence admitted at trial. We can find no instance in which evidence was misconceived or overlooked, nor has there been a showing that the trial justice was clearly wrong in any way. We therefore reject defendants' claim of error in this regard.

## V

Last, Bernard argues that although he was indicted as a principal to the charge of murder, in fact he was convicted of "aiding and assisting" in the commission of the crime. He therefore contends that it was improper to allow the jury to consider an aiding-and-assisting charge. We disagree.

■ Section 11-1-3 governs liability for one who aids, abets or otherwise assists in the commission of a crime. Section 11-1-3 provides that:

> "Every person who shall aid, assist, abet, counsel, hire, command or procure another to commit any crime or offense, shall be proceeded against as principal or as an accessory before the fact, according to the nature of the offense committed, and upon conviction shall suffer the like punishment as the principal offender is subject to by this title."

In *State v. Patriarca*, 71 R.I. 151, 156, 43 A.2d 54, 57 (1945), this court noted that the common-law distinction between principals and accessories in felonies still holds in this state. The court went on to note that in Rhode Island, an indictment for a felony must charge a person as a principal or as an accessory before the fact, according to the facts of the particular case, and that on an indictment charging a defendant as a principal he cannot be convicted on evidence showing that he was merely an accessory. *Id.* at 156–57, 43 A.2d at 57. However, this court has also reasoned that one who aids and abets in the commission of the crime and is also present at the scene may be charged and convicted as a principal. *State v. Colvin*, 82 R.I. 212, 107 A.2d 324 (1954).

■ In this case, the evidence established that it was Ann who fired the weapon that killed the victim. However, the evidence also demonstrated beyond a reasonable doubt both that Bernard assisted Ann in the murder and that he was present at the scene. A fair reading of § 11-1-3 reveals that where, as here, the defendant assists in the crime and is present when said crime is committed, it is not improper

to convict and punish the person as a principal. Consequently, we feel that Bernard was properly charged and convicted as a principal.

The defendants' appeal is denied and dismissed, the judgments of conviction entered in the Superior Court are affirmed, and the case is remanded to the Superior Court.