STATE

v.

Robert MACASKILL et al.

No. 86–81–C.A.

Supreme Court of Rhode Island.

April 14, 1987.

James O'Neil, Atty. Gen., Annie Goldberg, Thomas Dickinson, Sp. Attys. Gen., for plaintiff.

Charles K. Tibaldi, Providence, Kirk Griffin, Boston, Mass., for defendant.

OPINION

KELLEHER, Justice.

This is yet another chapter in what could be considered the eternally ongoing saga of the "Bonded Vault Caper." Much of the early history and facts can be found in this court's opinion in *State v. Macaskill*, 475 A.2d 1024 (R.I.1984). The state is now before this court appealing the trial justice's dismissal of an indictment charging the defendants, Robert Macaskill (Macaskill) and Lawrence Lanoue (Lanoue), for their role in the August 14, 1975 robbery of the Bonded Vault Company. The trial justice dismissed the indictment on the grounds of lack of speedy trial, a right guaranteed in the Sixth Amendment of the United States Constitution and article I, section 10, of the Rhode Island Constitution.

Macaskill and Lanoue were originally named in a multicount, secret indictment (indictment 1) on January 9, 1976, charging them with various offenses arising from the robbery of the Bonded Vault Company, a commercial safe-deposit company located in Providence.[1]

---

1. Also named in the indictment were Gerald Tillinghast, Ralph S. Byrnes, Jacob Tarzian,

Lanoue was not arrested until January 14, 1978, and was arraigned two days later. Macaskill was arraigned on October 8, 1978. Lanoue moved orally for a speedy trial at the time of his arraignment but did not file a written motion until June 28, 1979. Macaskill first filed a written motion for a speedy trial on March 20, 1980. Both Macaskill and Lanoue also filed motions to dismiss based on challenges to the composition of the grand jury that had issued the indictment. Their argument was successful, and the indictment was dismissed as far as Macaskill was concerned on August 12, 1980, and in regard to Lanoue on October 24, 1980.

A virtually identical indictment (indictment 2) was returned against both Lanoue and Macaskill on December 11, 1981. Although neither Lanoue nor Macaskill moved for a speedy trial on this indictment, both filed motions to dismiss for lack of speedy trial.

The trial justice granted those motions on the basis of Rule 48(b) of the Superior Court Rules of Criminal Procedure, now repealed, and the state appealed. Subsequently, in early May 1984, this court vacated the dismissal and remanded the case to the Superior Court for trial, ruling that Macaskill and Lanoue had not complied with Rule 48(b)'s strict requirement that none of the delay be attributable to them. *State v. Macaskill,* 475 A.2d 1024 (R.I. 1984). We noted that Macaskill and Lanoue had been absent from this jurisdiction without explanation for approximately two years between the original indictment and their arrests. *Id.* at 1028.

In June 1984 Macaskill and Lanoue were advised of this court's opinion, and their case was assigned to the trial calendar. Although all parties answered "ready" at various times from July 6, 1984, to October 18, 1985, the case was not reached for trial, the delay apparently due to court congestion. The case did come before the trial justice in November 1985 for consideration of Macaskill's and Lanoue's motions to dismiss for lack of speedy trial. The trial justice ruled that Macaskill and Lanoue had been denied a speedy trial and accordingly dismissed the indictment.

■ An analysis of a defendant's lack-of-speedy-trial claim must begin with a review of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In *Barker* the United States Supreme Court identified four factors that courts should assess in determining whether a particular defendant has been deprived of the right to a speedy trial. The four factors are (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. *Id.* at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. Accordingly, we shall analyze Macaskill and Lanoue's claim in light of these four factors.

In determining the length of delay, the trial justice accorded great weight to the period between the dismissal of indictment 1 in August and October 1980 and the issuance of indictment 2 in December 1981. This fourteen-to-sixteen-month delay on the part of the state was, in the words of the trial justice, "indefensible."

■ The trial justice's determination preceded the United States Supreme Court's decision in *United States v. Loud Hawk,* 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640, *reh. denied,* —— U.S. ——, 106 S.Ct. 1289, 89 L.Ed.2d 596 (1986), where the Court clarified the rule announced in *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). In *Loud Hawk* the Court held that "when defendants are not incarcerated or subjected to other substantial restrictions on their liberty, a court should not weigh that time towards a claim under the Speedy Trial Clause." *Loud Hawk,* 474 U.S. at ——, 106 S.Ct. at 654, 88 L.Ed.2d at 652. The Court noted that

"The speedy trial guarantee is designed to minimize the possibility of lengthy in-

Charles Flynn, John Ouimette, Walter Ouimette, and Joseph Danese. At trial in April 1976 Byrnes, Flynn and John Ouimette were convicted on various charges relating to their involve-

ment in the robbery. Tillinghast, Tarzian, and Walter Ouimette were acquitted. Danese was not tried because he was a witness for the state.

carceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *Id.* at ——, 106 S.Ct. at 654, 88 L.Ed.2d at 651 (quoting *United States v. MacDonald,* 456 U.S. at 8, 102 S.Ct. at 1504, 71 L.Ed.2d at 704).

Macaskill and Lanoue were neither incarcerated nor under indictment nor subject to bail during the period between the dismissal of indictment 1 and the issuance of indictment 2. Consequently, this interval cannot be used to determine if there was a violation of the constitutional guarantee of a speedy trial.

The trial justice was correct, however, in noting two other delays that Macaskill and Lanoue endured: the nine-month period between the issuance of indictment 2 and its dismissal on Rule 48(b) grounds in September 1982 and an eighteen-month period from the issuance of this court's opinion in *State v. Macaskill,* 475 A.2d 1024 (R.I. 1984), and the trial justice's decision to dismiss the charges in November 1985. This twenty-seven-month delay is sufficient to trigger inquiry into the other three *Barker* factors. *See State v. Austin,* 462 A.2d 359, 361–62 (R.I.1983) (three-and-a-half-year delay warrants examination of remaining three factors).

The second of the four *Barker* factors to consider is the reason for the delay. Macaskill and Lanoue point to the trial justice's finding that the delay was "completely unexplained" and therefore charged to the state.

When weighing reasons for delay in a speedy-trial claim, the Supreme Court has held that "different weights should be assigned to different reasons." *Barker v. Wingo,* 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. As the *Barker* Court stated:

"A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.*

This court has agreed with this approach, noting that the government "bears the ultimate responsibility to ensure that an accused is expeditiously brought to trial," *State v. Anthony,* 448 A.2d 744, 749 (R.I. 1982), but attaching "only minor weight" to the state's role in "delay caused by neutral factors such as crowded dockets." *Id.* at 750.

■ A review of the record indicates that much of the delay can be attributed to court congestion. Although court congestion is weighed against the state, it is not weighed so heavily as deliberate delay. *State v. Austin,* 462 A.2d at 362; *State v. Anthony,* 448 A.2d at 750.

The third *Barker* factor to examine is defendants' assertion of their right to a speedy trial. The record reveals that Macaskill and Lanoue both moved for a speedy trial under indictment 1. Under indictment 2, however, neither Macaskill nor Lanoue filed a motion for a speedy trial but instead moved to dismiss the indictment for lack of speedy trial. The trial justice admitted that Macaskill and Lanoue "were not knocking on the courthouse door" but noted that "they had made at least a pro forma request for a speedy trial way back in this case."

In *Tate v. Howard,* 110 R.I. 641, 656, 296 A.2d 19, 27 (1972), this court ruled that a defendant who was "figuratively banging on the courthouse doors asking that he be heard" was a sufficient assertion of the right to a speedy trial. It cannot be said that Macaskill and Lanoue showed the same aggressive assertion of their right to a speedy trial.

The fourth and final *Barker* factor to examine is prejudice to defendants. The trial justice found that Macaskill and Lanoue had not suffered any tangible prejudice but had endured the "inherent natural prejudice that comes to a defendant waiting for a trial to take place."

This court has rejected the argument that the inherent prejudice a defendant endures while awaiting trial is sufficient to satisfy the fourth *Barker* factor. In *State v. Long*, 488 A.2d 427, 436 (R.I.1985), we stated that "defendants' assertion that they have suffered emotional trauma from awaiting trial for over a year is an insufficient basis for a claim of denial of a speedy trial." The Supreme Court has similarly ruled, noting that

> "[t]he Speedy Trial Clause does not purport to protect a defendant from all effects flowing from a delay before trial. The clause does not, for example, limit the length of a preindictment criminal investigation even though 'the [suspect's] knowledge of an ongoing criminal investigation will cause stress, discomfort, and perhaps a certain disruption in normal life.'" *Loud Hawk*, 474 U.S. at

——, 106 S.Ct. at 654, 88 L.Ed.2d at 652 (quoting *United States v. MacDonald*, 456 U.S. at 9, 102 S.Ct. at 1502, 71 L.Ed.2d at 704).

■ Relying on the foregoing examination of the four *Barker* factors, we are of the opinion that the trial justice was in error when he dismissed the indictment on speedy-trial grounds.

The state's appeal is sustained, and the case is remanded to the Superior Court for trial.