**STATE**

v.

**James GRUNDY.**

**No. 89–529–C.A.**

Supreme Court of Rhode Island.

Nov. 21, 1990.

James E. O'Neil, Atty. Gen., Annie Goldberg, Jeffrey Greer, Asst. Attys. Gen., for plaintiff.

Suzanna J. Mitchell, Robert B. Mann, Wistow & Barylick, Inc., Providence, for defendant.

## OPINION

FAY, Chief Justice.

This matter is before the Supreme Court on appeal by the defendant from a Superior Court jury conviction of first-degree arson. The defendant, James Grundy, appeals the conviction, alleging he was denied his right to a speedy trial and assigning as error the trial court's denial of his motion for judgment of acquittal, motion to suppress, and motion for a new trial. Additionally, the defendant contends that the trial justice erred in instructing the jury and in restricting the cross-examination of a witness. We agree with the trial justice and sustain the conviction.

On December 25, 1982, an incendiary fire occurred in a building located at 54 Pocassett Avenue in Providence, resulting in the death of Lawrence Dadona, a tenant of the building. Firefighters observed defendant in the building on three separate occasions during the fire. During an interview by the Providence police department on December 30, 1982, James Grundy stated that he had seen the fire on December 25, 1982, while taking a walk through the area.

On January 28, 1983, defendant went to the central station of the Providence police department and made a statement to Patrolman Raymond Zincone that he and his brother Arthur were responsible for the fire. Following that interview, defendant stated the following to Detective Edward Trafford: that he had driven his brother Arthur to 54 Pocassett Avenue on December 25, 1982, and that Arthur exited the car carrying two gallons of gasoline and then entered the structure at that address. The defendant then stated that he observed his brother leave the building through the back door and throw a lighted match back into the house. Further statements made by defendant revealed that he had knowledge of the pattern of the fire. Additionally the testimony of Arthur's wife that he was with her at the time of the fire's ignition refuted the allegation that Arthur could have set the fire. Subsequently defendant was convicted of arson by a Superior Court jury in November 1988.

I

■ In this appeal defendant raises six points, the first of which is that he was denied the right to a speedy trial pursuant to the Sixth Amendment to the United States Constitution and article I, section 10, of the Rhode Island Constitution. The fire occurred on December 25, 1982, and defendant was arraigned in April 1983. The jury trial was commenced in November 1988, almost six years after arraignment. Although six years was determined by the trial justice to have been a "presumptively prejudicial" delay, examination of the reasons for delay reveals that this length of time was not, in fact, violative of defendant's constitutional right. When a motion to dismiss for lack of a speedy trial is reviewed, it is necessary to evaluate the reasons for delay in light of the four-pronged balancing test established by the Supreme Court of the United States in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which this court has followed in *State v. Macaskill*, 523 A.2d 883, 884 (R.I.1987), and *State v. Adams*, 481 A.2d 718, 726 (R.I.1984). The balancing test developed in *Barker* requires an examination of the length of the delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and the effect of the prejudice resulting from the delay. It is recognized that the six-year length of delay in this instance may have prejudiced defendant. In *Macaskill* this court determined a twenty-seven-month delay to be sufficient to trigger inquiry into the reasons for the delay. *State v. Macaskill*, 523 A.2d at 886. Length of time taken alone is not indicative of a denial of a speedy trial. It is necessary to

examine the remaining three prongs of the balancing test and to weigh each factor accordingly to determine whether defendant's constitutional right has been abridged.

■ In *Barker* the Supreme Court established that different reasons for delaying a trial should be afforded different levels of consideration. *Barker v. Wingo,* 407 U.S. at 530–31, 92 S.Ct. at 2192–93, 33 L.Ed.2d at 116–18. Deliberate attempts to delay a trial should be weighed more heavily against the government than nondeliberate attempts such as negligence or overcrowded courts. *Id.*

Because of the varying degrees of consideration applied, it is imperative that this court examine the cause of the delay and the motivations behind the delaying party's actions. The reasons for the six-year delay are set forth below. From the time of arraignment in 1983 to December 1985, defendant conducted discovery and sought nine separate continuances. From March 1985 through May 1987, defense counsel made five additional motions to continue the proceedings citing witness unavailability, excusal of defense counsel, the health of defense counsel, and the court's failure to rule on defendant's pending motion to quash a subpoena for the medical records of defendant's brother Domenic as reasons necessitating the continuances. The defendant's pending motion was denied on May 29, 1987. During this period the state moved for one continuance because of the unavailability of an investigating officer.

On May 7, 1987, defendant filed a motion to dismiss for lack of speedy trial, which was referred to the trial justice for resolution. A trial date was scheduled for August 31, 1986, but was not reached. The trial was then scheduled on six additional occasions. Owing to the unavailability of prosecutors or witnesses, the state requested four different continuances. The defendant, in the period from August 1986 to November 1988, requested only one continuance because counsel was engaged elsewhere on trial. In one instance, the trial justice found the case was not reached as a result of court congestion.

Finding that the state's continuances were not motivated by a deliberate intent to delay the proceedings, the trial justice properly weighed the state's actions less heavily in accordance with *Barker. Id.*

The third prong of the test, defendant's assertion of his right to a speedy trial, is to be considered in light of the fact that defendant was arraigned in April 1983 and did not assert his right until May 1987. In determining that defendant's actions fell "short of evidencing a real desire to invoke his constitutional right and proceed to trial," the trial justice properly considered defendant's delayed assertion of his right and defendant's "pursuit of his own agenda," manifested by his filing repeated motions for continuance.

The fourth and final element of the *Barker* test to be considered concerns prejudice to the accused. The right to a speedy trial is intended to protect a defendant from "(i) * * * oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) limit the possibility that the defense will be impaired." 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118. The defendant was only incarcerated for a short period until bail was made, and there was no evidence of emotional trauma caused to defendant because of anxiety and concern; therefore, the first two safeguards of the speedy-trial rule were not violated. The delay, however, did yield an impairment of the defense owing to the resulting unavailability of two former tenants of 54 Pocassett Avenue who would testify that their apartment had been ransacked after the fire. The trial justice recognized that defendant would be prejudiced by the loss of the witnesses' testimony and therefore eliminated the possibility of such prejudice by excluding any evidence relating to or arising out of said testimony.

This court recognizes that the state "bears the ultimate responsibility to ensure that an accused is expeditiously brought to trial," and after balancing the four factors attributable to the right to a speedy trial, we are of the opinion that no deliberate or tactical delays were orchestrated by the state. *State v. Anthony,* 448 A.2d 744, 749

(R.I.1982). The proper weight was ascribed to each prong of the balancing test, and defendant was not prejudiced by the six-year delay from the date of arraignment to the time of trial. We conclude that the trial justice did not err in his denial of defendant's motion to dismiss for lack of a speedy trial.

## II

■ The defendant's second allegation concerns the trial justice's denial of defendant's motion for a judgment of acquittal. The trial justice's review of the motion adhered to the standards established by this court. *State v. Pacheco*, 481 A.2d 1009, 1017 (R.I.1984).

"When called upon to rule on a motion for judgment of acquittal, a trial justice must consider only that evidence that the prosecution contends is capable of generating proof of guilt beyond a reasonable doubt. The trial justice must view that evidence in the light most favorable to the prosecution, drawing all reasonable inferences consistent with guilt, and without passing on the credibility of witnesses or weighing the evidence." *Id.; State v. Romano*, 456 A.2d 746, 756–57 (R.I.1983); *State v. Ahmadjian*, 438 A.2d 1070, 1084 (R.I.1981).

It is important to note that the state need not prove its case beyond a reasonable doubt nor disprove every "inference of innocence" of the defendant in order to defeat a motion for judgment of acquittal. *State v. Caruolo*, 524 A.2d 575, 582 (R.I. 1987). It is only necessary that the state produce sufficient circumstantial evidence, "as long as the totality of the circumstantial evidence offered constitutes proof of guilt beyond a reasonable doubt." *Id.* at 581.

In *Caruolo* the defendant's conviction of arson was based on circumstantial evidence linking him to the fire. *Id.* at 582. The state was able to place the defendant at the scene of the fire, to determine that the structure had been mopped clean prior to Caruolo's being left alone, and to establish that Caruolo was the last person in the structure before it was burned as the re-

sult of an intentional incendiary act. *Id.* In addition, there were no signs of forced entry following Caruolo's departure from the scene. This was sufficient to "establish[] a pattern of corroborating circumstances" and defeat a motion for acquittal. *Id.*

■ In the present case, defendant has exhibited knowledge of the ignition of the fire, including the placement of accelerants, and the pattern of the fire, which may lead a reasonable jury to infer that he was involved in the setting of the fire. By his own admission, defendant placed himself at 54 Pocassett Avenue, the scene of the fire, both before and during the fire. The defendant's assertion that his brother Arthur was responsible for the fire was refuted by the testimony of Arthur's wife.

■ A judgment of acquittal is granted when the evidence, viewed in the light most favorable to the state, is such that no rational juror could find guilt beyond a reasonable doubt. *State v. Dordain*, 566 A.2d 942, 945 (R.I.1989). Viewing the totality of the evidence in the present matter in a light most favorable to the state, the trial justice properly determined that a rational juror could have found beyond a reasonable doubt that defendant was guilty of arson. Consequently, we find no error on the part of the trial justice.

## III

The defendant asserts that the trial justice committed reversible error in failing to instruct the jury as defendant requested and in instructing the jury improperly regarding what constitutes a reasonable doubt.

■ As this court established in *State v. Andrade*, 544 A.2d 1140, 1143 (R.I.1988), and followed in *State v. Desrosiers*, 559 A.2d 641, 645 (R.I.1989), it is not reversible error for a trial justice to refuse to give instructions requested by a defendant, as long as the charge given adequately covers the law relating to the request. The defendant alleged that the trial justice failed to instruct the jury properly about inferences and reasonable doubt. In re-

viewing the instructions to the jury, we find that the trial justice charged the jury correctly concerning the proper weight to be applied to an inference and accurately defined an inference as "a conclusion which your mind accepts as true because your reason tells you that it is true due to other facts being true." The trial justice included examples to clarify any confusion jurors may have encountered regarding the instructions. The instructions were complete in that they covered the pertinent areas of law concerning inferences, circumstantial evidence, reasonable doubt, and the elements of the crime.

This court's decision in *State v. Thorpe*, 429 A.2d 785, 790 (R.I.1981), accepting a jury instruction on reasonable doubt, which explained reasonable doubt as "a doubt based on evidence or lack of evidence," is dispositive of defendant's allegation that the trial justice committed reversible error in instructing the jury that a reasonable doubt is a doubt "founded in reason." Pursuant to *Thorpe* a criminal defendant in Rhode Island is entitled to an explanation of reasonable doubt in the jury instructions. We find the trial justice's instructions to be in accord with those accepted in *Thorpe* and, therefore, find no reversible error regarding jury instructions. *Id.* at 789.

## IV

Next defendant claims the trial justice committed reversible error in restricting defense counsel's cross-examination of Detective Edward Trafford. Although it is true that an accused is entitled to effective cross-examination of the prosecution's witnesses against him, the trial justice is free to exercise his discretion to exclude questions he deems irrelevant or lacking probative value. *State v. Freeman*, 473 A.2d 1149, 1153 (R.I.1984); *State v. Anthony*, 422 A.2d 921, 924 (R.I.1980).

The defendant's counsel sought to question Detective Trafford to ascertain that defendant's brother Arthur was never charged with the crime of arson even though a warrant had been issued for Arthur as well as for defendant. In *State v.*

*Bernier*, 491 A.2d 1000 (R.I.1985), this court found that "competent and otherwise admissible evidence of another crime is not made inadmissible by reason of defendant's acquittal of that crime." *Id.* at 1005 (quoting *People v. Griffin*, 66 Cal.2d 459, 464, 426 P.2d 507, 510, 58 Cal.Rptr. 107, 110 (1967)). In *Bernier* the state was permitted to introduce evidence of the defendant's prior history of sexual assault when the defendant was charged with a similar offense. It was error, however, for the trial justice to fail to inform the jury of the defendant's acquittal on the previous charges. *Id.* at 1006. More recently, in *State v. Woods*, 544 A.2d 141, 144 (R.I. 1988), this court determined that it was error for the trial justice to exclude evidence of a prior acquittal of a coindicted defendant on charges concerning the same individuals and arising from the same events and circumstances leading to the defendant's conviction. The present case is distinguished from *Woods* and *Bernier* in that it does not involve a question of informing the jury that an identical chain of events had led to the acquittal of Arthur for the same crime with which defendant was charged. Arthur was never charged with the crime of arson; therefore, no prosecution, judgment, or acquittal could have been issued. Detective Trafford's testimony concerning the warrant for Arthur and subsequent decision not to charge him with arson is not probative of the case against defendant. The trial justice did not commit error in restricting defense counsel's cross-examination of Detective Trafford.

## V

The defendant claims that the trial justice committed reversible error in denying the motion to suppress statements made by defendant to the police on December 30, 1982, and January 28, 1983. The defendant contends that the December 30, 1982 statement was the result of an illegal arrest, was not properly recorded, and was prejudicial to defendant. The defendant further argues that his January 28, 1983 statement should have been suppressed by the trial

justice because no probable cause existed to justify his being in custody.

 It is well settled that the fruits of an illegal detention are inadmissible in evidence. *Taylor v. Alabama,* 457 U.S. 687, 694, 102 S.Ct. 2664, 2669, 73 L.Ed.2d 314, 321 (1982). The defendant's appeal necessitates a review of the events leading to defendant's statements in the present matter to determine properly whether he was illegally detained. In *State v. Bailey,* 417 A.2d 915 (R.I.1980), this court established that three factors need be considered to determine whether an arrest or a seizure had occurred.

> "[T]he extent to which the person's freedom of movement has been curtailed and the degree of force used by the police * * * the belief of a reasonable innocent person in the same circumstances * * * and whether the person had the option of not going with the police * * *." *Id.* at 917–18.

On both occasions, December 30 and January 28, defendant went to the police station of his own accord and voluntarily made his statements concerning his involvement in the fire. In each instance, defendant was read his *Miranda* warnings prior to giving his statements, he was free to leave the police station, and he was released after completing the statements. It does not appear that defendant's personal freedom was curtailed or that he had reason to believe his liberty would be restricted at any time during the interviews; therefore, an illegal detention did not occur.

 The defendant's contention that the statement made on December 30 should be suppressed because no notes were taken during the interview is without merit. A lack of notes is not dispositive of the admissibility of the testimony of Detective Trafford and Detective White. In addition, defendant's assertion that the trial justice violated Rule 403 of the Rhode Island Rules of Evidence in failing to suppress the December 30 statement is without merit. Rule 403 may be invoked to exclude evidence that is prejudicial to defendant to the extent that the negative effect outweighs its probative value. Such evidence is ren-

dered inadmissible if it is prejudicial and irrelevant. *State v. Lemon,* 497 A.2d 713, 720 (R.I.1985). The ultimate determination of the effect of the evidence is within the trial justice's discretion. *State v. Martini,* 460 A.2d 936, 938 (R.I.1983). We find no error in the trial justice's determination that the statements made on December 30, although recognized as prejudicial toward defendant, were also of highly probative value.

 The defendant's final contention regarding the suppression of his statements is grounded in the trial justice's reference to defendant being in "custody" on January 28. Although the trial justice did find defendant to have been in custody, it is important that this court not disregard the trial justice's previous determination that at no time during either interview was defendant's freedom of movement curtailed to the extent that it constituted an arrest. The trial justice considered defendant's previous statements concerning his involvement in the fire, coupled with the testimony of other witnesses, and found sufficient probable cause for the detention. In reviewing the circumstances, we find no error with the trial justice's declining to suppress the statements as evidence.

## VI

 The final issue on appeal is whether the trial justice erred in denying the motion for a new trial. The ruling of a trial justice on a motion for new trial will not be disturbed by this court unless the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *State v. Girouard,* 561 A.2d 882, 890 (R.I.1989); *State v. Henshaw,* 557 A.2d 1204, 1207 (R.I.1989); *State v. LaPointe,* 525 A.2d 913, 914 (R.I.1987). Initial determination of a motion for new trial requires the trial justice to review the evidence in light of the charge given to the jury and independently appraise the credibility of the witnesses and the weight of the evidence. *State v. Girouard,* 561 A.2d at 890–91; *State v. Henshaw,* 557 A.2d at 1207–08; *State v. LaPointe,* 525 A.2d at 914; *State v. Caruolo,* 524 A.2d at 585.

The motion for a new trial is then properly denied provided the trial justice's assessment of the evidence causes him or her to reach a result concurring with the jury's conclusion. *See Girouard*, 561 A.2d at 891. A review of the record indicates that in making his decision to deny the defendant's motion for a new trial, the trial justice properly considered the evidence presented at trial. The trial justice found that the fire was incendiary in nature, that the defendant was present at the fire, and that Lawrence Dadona died as a result of the fire. He then determined that the testimony of the detectives who interviewed the defendant was credible and, in weighing the evidence, concluded that the jury's decision was not in error.

For the reasons stated, the defendant's appeal is denied and dismissed. We affirm the judgment of conviction, and the case is remanded to the Superior Court.