[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is a motion to dismiss an information on speedy trial grounds pursuant to the U.S. Constitution Amendments VI, XIV, and Rhode Island Constitution Article I, Section 10. David F. Miller (the "Defendant") seeks to dismiss an information charging him with various counts of Insurance Fraud and Obtaining Money Under False Pretenses. The Defendant bases this motion on a delay of twenty and onehalf months from the time Defendant was first arrested on these charges until the time that hearings on Defendant's Motion to Dismiss concluded. The State objects to the Defendant's motion.
Facts and Travel
On January 15, 2002, the Defendant, David F. Miller, was arrested by the Rhode Island State Police. The following day he was arraigned in District Court, on three complaints charging him with various counts of Insurance Fraud and Obtaining Money Under False Pretenses. At the time of Defendant's arraignment bail was set, and the Defendant had to retain the services of a bondsman to secure his release.
The District Court scheduled a pre-arraignment conference for March 20, 2002 and the Superior Court arraignment for March 27, 2002. On March 20, 2002, the date of the first scheduled pre-arraignment conference, the Attorney General informed the Court that the State was not ready to proceed and a second pre-arraignment date was scheduled for May 8, 2002. On May 8, 2002, the Attorney General informed the Court that the State was not prepared to proceed. A third pre-arraignment date was set for June 26, 2002 which was rescheduled to August 15, 2002 as a result of the State not being ready to proceed. The fifth and final scheduled pre-arraignment conference was set for October 1, 2002, at which time the Superior Court Magistrate dismissed the Complaint for lack of prosecution.
On July 24, 2002, six months after the Defendant was arraigned, Defendant filed a Motion to Dismiss founded upon his right to a speedy trial pursuant to the Rhode Island State Constitution and the United States Constitution. In dismissing the case for lack of prosecution, the Magistrate did not discuss the merits of this claim. He did explain to defense counsel, however, that the charges facing Defendant could be brought again by the State. The State then proceeded to file an information against the Defendant on October 23, 2002.
On November 29, 2002, the Defendant was arraigned in Superior Court and bail was set. Defendant filed for discovery, pursuant to Rule 16 of the Superior Court Rules of Criminal Procedure on December 11, 2002, to which the State responded on May 7, 2003. On December 17, 2002, Defendant filed another Motion to Dismiss on speedy trial grounds, setting forth two grounds justifying dismissal: first, that the State should not be allowed to recharge the Defendant with the same crimes after said charges had been dismissed by a Magistrate for failure to grant a speedy trial, and second, that even if the State was allowed to bring said charges by means of voluntary dismissal, the State's conduct in this case was impermissible. A hearing on Defendant's Motion to Dismiss was subsequently scheduled for April 3, 2003.
During the five-month period between the Defendant's discovery request and the State's response, four pre-trial conference dates were scheduled and then rescheduled. The dates of the scheduled pre-trial conferences were as follows: February 6, 2003; February 20, 2003; February 27, 2003; and March 20, 2003. On March 20, 2003, the case came before this Court.
On April 3, 2003, partial arguments were heard on Defendant's Motion to Dismiss, and the matter was continued until April 10, 2003, in order to give counsel the opportunity to submit a "facts and travel" for the court to review. Additional arguments were heard on April 10, 2003. During oral argument, Defendant asserted that the previous dismissal by the Superior Court magistrate was dispositive of the issue. This Court, rejecting that argument, denied Defendant's Motion to Dismiss, and scheduled an evidentiary hearing on Defendant's Motion to Dismiss based upon speedy trial deprivation under a traditional Barker v. Wingo analysis.
Three half days were initially set aside by this Court to hear this matter: June 18, 2003; June 19, 2003; and June 20, 2003. Hearing dates were subsequently rescheduled and this matter concluded on September 24, 2003. Defendant's Motion to Dismiss on speedy trial grounds is now before this Court.
Analysis
In the seminal case, Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court identified four factors that courts should assess when called upon to determine whether a particular defendant has been deprived of the right to a speedy trial. The four factors to be considered are: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. These four factors are related and should be considered cumulatively with the circumstances of the case. Though certain factors may weigh more heavily against the State given the particular circumstances surrounding the case, no one factor is determinative in this analysis. Accordingly, this Court will examine Defendant's speedy trial claim in light of these four factors.
Length of Delay
In Barker, the United States Supreme Court concluded that individual states shall be free to determine what constitutes a reasonable length of delay. 407 U.S. at 530-31, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. Absent a presumptively prejudicial delay, there is no constitutional basis for a speedy trial right claim, thus ending the court's inquiry. Id. In Statev. Tarvis, 465 A.2d 164 (R.I. 1983), the Supreme Court of Rhode Island addressed what the minimal period is to trigger a full-scale Barker v.Wingo analysis. Though the Court in Tarvis conducted a complete Barker
analysis when the defendant in question had suffered a delay of approximately ten months, the Court admonished that in a future case it "may draw the line regarding `presumptively prejudicial' delay at twelve months in the absence of special circumstances." Id. at 175. The standard for measuring this delay begins at the arrest or accusatory stage. Once a dismissal is granted for an undue delay in proceeding to trial, the only effective remedy "is absolute and complete discharge." See State v.Bonsante, 313 A.2d 134 (R.I. 1973). Thus, subsequent to a dismissal for deprivation of a speedy trial, the State is barred from prosecution again for the same offense. Id.
In the instant case, twenty and one-half months elapsed from the time that the defendant was first arrested on these charges until the time that hearings on Defendant's Motion to Dismiss were concluded. This Court finds that a twenty and one-half month delay is presumptively prejudicial, thus requiring this Court to consider the remaining threeBarker factors in determining whether the Defendant has been deprived of his constitutional right to a speedy trial.
Reason for the Delay
The second factor to be considered in the Barker analysis is the reason for the delay. 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. InBarker, the United States Supreme Court explained that different reasons should be accorded different weights. See id. While a deliberate attempt by the government to delay the trial in order to hamper the defense should be weighed heavily against the State, a more neutral reason such as overcrowded courts or negligence should be weighed less heavily against the State. Id. A valid reason for the delay, such as a missing witness, would constitute a justified reason for the delay not to be weighed against the State. Id.
In the present case, no reasons have been provided by the State for the numerous delays. Furthermore, it is clear to this Court that the Attorney General's Office failed to comply with the Defendant's repeated discovery requests in a timely manner. However, the Defendant in the present case does not dispute the fact that the State has not deliberately delayed the trial in order to hamper the defense. Rather the Defendant contends that the State ignored Defendant's repeated requests for discovery and failed to acknowledge the Defendant's expressed desire to proceed with this matter. The Superior Court Magistrate found that the reason for the State's inability to proceed on this matter was lack of prosecution. While it is clear to this Court that this case was passed for trial on numerous occasions at the request of the State, a review of the record indicates that much of the delay can be attributed to a general disinterest and lack of effort in undertaking prosecution of this matter. Although such negligence is to be weighed against the State, it is not weighed against the State as heavily as a deliberate delay. SeeState v. Macaskill, 523 A.2d 883 at 885 (R.I. 1987).
Defendant's Assertion of the Right
An extensive discussion of this factor is unnecessary because Defendant filed a motion to dismiss the complaint on speedy trial grounds only six months after he was arraigned in District Court. The charges were subsequently dismissed without prejudice for lack of prosecution. In dismissing the case, the Superior Court Magistrate's comments indicate he was not doing so on the basis of Defendant's speedy trial right, expressly stating that upon the dismissal these charges could be resurrected. After the Defendant was arraigned in Superior Court on November 29, 2002, Defendant proceeded to file another Motion to Dismiss on speedy trial grounds in Superior Court on December 17, 2002. Thus, it is clear to this Court that the Defendant has been asserting his right to a speedy trial early and often since he was first charged on January 16, 2002. Consequently, this Court concludes that Defendant's actions constituted timely assertion of his right to a speedy trial.
Prejudice to the Defendant
Prejudice to the Defendant caused by the delay is the fourth and final factor in the Barker analysis. 407 U.S. at 532, 92 So. Ct. at 2193, 33 L.Ed.2d at 118. In Barker, the United States Supreme Court identified three primary interests the right to a speedy trial was designed to protect: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused, and (iii) to limit the possibility that the defense will be impaired. Id. Of those three interests, the last is to be afforded the most weight, as "the inability of a defendant to prepare his case skews the fairness of the entire system." Id. The Supreme Court of Rhode Island has extended this list to include other forms of prejudice a defendant may suffer due to an unreasonable delay, including, interference with the defendant's liberty, disruption of employment, and depletion of financial resources.State v. Wheaton, 528 A.2d 1109, (R.I. 1987).
The Supreme Court of Rhode Island has carefully analyzed assertions of prejudice by defendants seeking to dismiss a case on speedy trial grounds. In Macaskill, the Supreme Court found that the fact that a defendant "had endured `the inherent prejudice that comes to a defendant waiting for a trial to take place'" was not sufficient to meet the burden of the fourth Barker factor. 523 A.2d at 885. That the defendant inMacaskill had suffered emotional trauma due to a delay in trial that lasted over a year did not meet the threshold for granting defendant's motion to dismiss on speedy trial grounds. Id. at 886.
In State v. Nordstrom, 529 A.2d 107 (R.I. 1987), the defendant requesting dismissal on speedy trial grounds contended that the delay prejudiced him in that it rendered three witnesses unavailable for his defense. Id. at 112. Upon careful examination, the Court determined that any unavailability of these witnesses was not a direct consequence of the delay in bringing the defendant to trial. Id. at 113. The Court found that the first witness was in fact available for trial and did testify in the defense case, and the testimony of the second witness was available from a prior trial. Id. With respect to the third witness, the Court found that the defendant never made any efforts to locate the third witness at the time of the original speedy-trial hearing and the mere passage of time was not responsible for her unavailability. Id. Thus, the Court was careful to analyze whether any potential prejudice that may be experienced by a defendant was due to the delay he suffered. Id.
Similarly, in State v. Bernard McMaugh and Ann McMaugh, 512 A.2d 824
(R.I. 1986), the Supreme Court's primary focus in examining the defendants' speedy trial motion, was whether the defendants were somehow prejudiced by the protracted nature of the proceedings. In McMaugh, the defendants argued that the trial justice erred in refusing to dismiss the action on speedy trial grounds. 512 A.2d at 827. The Supreme Court found that neither the state nor the defendants were solely responsible for the numerous delays in reaching trial. Id. The defendants contended that the state's dilatory tactics prevented the defense from securing the presence of a witness who was allegedly in another state at the time of the trial and therefore unable to testify. Id. at 828. The Supreme Court held that the defendants' mere allegation that the witness would so testify and would have been available to do so but for the delay, was not sufficient to find that actual prejudice occurred. Id.
In contrast to the defendants in Macaskill, Nordstrom and McMaugh, the Supreme Court in Wheaton concluded that the defendant was prejudiced due to the delay in reaching trial and dismissed the action on speedy trial grounds. 528 A.2d at 1111. At the hearing on defendant's motion to dismiss on speedy trial grounds, the defense presented testimony from the defendant as well as the defendant's mother on the issue of prejudice caused by the delay. Id. According to the witnesses' testimony, the delay in reaching trial led to the breakup of the defendant's marriage and subsequent divorce, the loss of his home, and his inability to procure employment in the jewelry field in which he had previously worked. Id.
Despite defendant's efforts to get his life in order after release from the ACI on bail by attending computer school and procuring several jobs, he was released from these jobs upon the disclosure of his pending indictment. Id. The defendant ultimately secured a job as a garbage truck driver. Id. Additionally, there was testimony describing the deterioration of the defendant's mental and physical well being. Id. The Supreme Court found that defendant had "presented considerable evidence of such prejudice thus overcoming the deficiency present in those cases where the mere assertion that defendant has suffered `emotional trauma' from awaiting trial was held to be an insufficient basis for a claim of a denial of a speedy trial." Id. at 1112.
In the present case, Defendant asserts that he has suffered substantial prejudice since his arrest on January 15, 2002. The nature and extent of this prejudice can be categorized as: losses related to real and personal property holdings; losses related to the operation and gross revenues of Defendant's business, Miller Auto Body, Inc.; impairment of the preparation of his defense resulting from the State's continued failure to permit inspection of three of the five vehicles involved in the alleged offenses; and the general anxiety and distress inflicted upon Defendant by this long pending case.
Defendant presented one witness in support of his claim that the trial delay in this matter has caused him to sustain substantial real and personal property losses. Michael A. Kelly, an attorney testified that he has performed legal services for the Defendant for twelve or thirteen years. Attorney Kelly referenced four pieces of real estate, including the Defendant's residence, vacation home in New Hampshire and his business location, as being in various stages of default or foreclosure. At the time of his testimony on July 17, 2003, he indicated that Defendant was considering filing a bankruptcy petition in an effort to protect some of his assets.
The Court finds that while Attorney Kelly painted a bleak picture regarding these real estate holdings, his testimony was not sufficiently detailed as to the time frames within which these delinquencies developed and no causal link was established between Defendant's present legal difficulties and Defendant's deteriorating financial state. This Court is left to speculate whether the financial downfall was longstanding or coincided with the commencement of this criminal prosecution against the Defendant.
The Defendant relied upon a certified public accountant and three auto body repair business owners to demonstrate his losses related to this business, Miller Auto Body, Inc. Accountant, Alfred T. Marciano testified that he reviewed tax returns, tax receipts, journals, and cash receipts for the period between 1997 and 2002, and prepared a projection for 2003. Based upon this review, Mr. Marciano stated that the Defendant's gross revenue from his business has been steadily increasing through the year 2000 resulting in gross revenue totaling $2,147,557.00 He also predicted that by the end of 2003, the gross revenue would significantly decrease to $745,963.00.[1] Mr. Marciano also testified that from the first quarter of 1997 through the second quarter of 2003, the number of employees in Defendant's business decreased from thirteen to five.
In an attempt to further substantiate his business's financial deterioration, Defendant presented auto body business owners, Randy Bottella, David Reynolds, and John Petrarca. The collective thrust of their testimony was that during the years 1999 through 2003 their businesses had all experienced increases in gross revenue.[2] This Court finds that Defendant's reduced business revenue, reduced workforce, and the increased revenues of his fellow business owners fails to demonstrate that Defendant's business losses are a result of the trial delay in this matter. This court notes that Mr. Marciano's testimony demonstrates decreases in Defendant's gross revenues in the amount of $473,133.00 for the year 2000, and $683,217 for the year 2001, yet the prosecution of Defendant did not commence in this matter until January 15, 2002.
The Court also rejects the testimony offered to demonstrate increased revenues of the three auto body businesses compared to Defendants. The Defendant failed to establish that these businesses were sufficiently similar to his business to permit their acceptance for purposes of comparison. For example, Mr. Bottella indicated that he commits ten percent of his revenues to advertising in radio and television and attributed his increase in business to his advertising campaign. The record contains insufficient information relating to the relative size, workforce, or business practices of these three businesses to permit the court to draw any reasonable inferences related to Defendant's business.
The Defendant also asserts that notwithstanding repeated attempts, he has been unable to view and inspect three of the five vehicles involved in the charges contained in the information. Defendant offered the testimony of Attorney Michael Sendley who assumed substantial responsibility in preparing the defense of this matter. Attorney Sendley testified that after repeated requests by telephone and correspondence, the State has provided access to only two vehicles to date. He further indicated that the outright denial of inspection of the remaining three vehicles has substantially impaired the preparation of the defense of this matter. The development of the record on this issue, however, is incomplete at this time. It is clear that the Defendant has been deprived of an inspection of critical evidence. The Court is unable to conclude, however, that it is presently confronted with a situation involving the loss or destruction of evidence that is attributable to the delay of the trial of this matter.[3]
Finally, Defendant contends that he and his family have suffered anxiety due to the lengthy delay in this case proceeding to trial. The Supreme Court of Rhode Island has repeatedly noted that mere allegations of emotional trauma due to a delay are not sufficient to warrant a dismissal of the charges. See Macaskill, 523 A.2d at 886. The Defendant in the present case devoted little attention to developing the record on this issue. He has not demonstrated to this Court that the anxiety he and his family allegedly endured from awaiting trial was so prejudicial in nature as to satisfy the fourth Barker factor.
Relying on the foregoing examination of the four Barker factors, this Court is of the opinion that there has been no denial of the Defendant's constitutional right to a speedy trial. Consequently, Defendant's Motion to Dismiss on speedy trial grounds is denied.
[1] The 2003 projection was based upon year-to-date gross revenues and expenses and information from previous tax returns.
[2] Witnesses, Bottella and Reynolds testified to percentage increases while Petrarca provided actual gross income figures.
[3] The Court does not opine as to whether Defendant has other avenues available for relief regarding a Rule 16 violation or spoliation of evidence. See David Roberts and Babatunde Akinjobe, No. 2002-405-C.A., slip op. at 5, 8 (R.I., filed November 14, 2003).